STATE of South Dakota, Plaintiff and Appellee,

v.

Burton LOHNES, Defendant and Appellant.

No. 14142.

Supreme Court of South Dakota.

Considered on Briefs Oct. 26, 1983.

Decided Feb. 29, 1984.

Douglas E. Kludt, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

John J. Burnett, Rapid City, for defendant and appellant.

WOLLMAN, Justice.

In *State v. Lohnes*, 324 N.W.2d 409 (S.D. 1982), we reversed defendant's conviction for second-degree murder arising from the November 13, 1980, shooting of a Rapid City businessman. Pursuant to a plea agreement, the State subsequently charged

defendant with first degree manslaughter rather than second degree murder. Defendant pleaded guilty and was sentenced to 347 years in the state penitentiary. Defendant appeals from the judgment of conviction, contending that the trial court erred in denying his motion to withdraw his plea of guilty. We reverse and remand.

At the February 14, 1983, arraignment, the trial court followed the mandates of *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and informed defendant of his constitutional privilege against self-incrimination, his right to confront his accusers, and his right to a jury trial, as well as of the nature and consequences of the guilty plea. Defendant's attorney then stated the terms of the plea agreement that had been reached with the State, which provided that defendant would be charged with first degree manslaughter rather than with second degree murder and that the appropriate disposition would be a "sentence of a term of years and not life imprisonment" if defendant pleaded guilty to the manslaughter charge. After making some preliminary inquiries of defendant regarding defendant's understanding of the plea agreement, the trial court engaged in the following colloquy with defendant:

THE COURT: That is correct. I have indicated from what I know of the situation now that I would go along with that plea discussion, that is, that I would not give you a life sentence, but that I will set a definite term of years.

THE DEFENDANT: Yes.

THE COURT: And that is also your understanding?

THE DEFENDANT: Yes.

THE COURT: But you understand I can set whatever term of years that I think is best in this instance?

THE DEFENDANT: Yes.

THE COURT: No one has recommended to me that it be a specific number of years; that is, no one has told you that it would be five years, or one year or twenty years or no numbers have been told you; is that correct?

THE DEFENDANT: Yes.

THE COURT: And you understand that I am not bound to set any specific number of years but that I can set whatever number I feel is best in this case?

THE DEFENDANT: Yes.

THE COURT: Having all that in mind, it is still your intention to enter a plea to this charge; is that correct?

THE DEFENDANT: Yes.

THE COURT: And you don't feel that you have been threatened or forced in any way to enter a plea?

THE DEFENDANT: No.

Two weeks later at the sentencing hearing, the trial judge reiterated to defendant that he "would not sentence you to the rest of your natural life in the penitentiary" and again advised defendant that the length of the sentence was entirely within the trial court's discretion. After sentencing defendant to 347 years, the trial judge commented:

So that the record is clear, there is 171 years and 7 months of good time earned immediately on that sentence. That leaves a net sentence of 175 years and 6 months of which a first time offender does one-fourth or 43.8 years.

It will be that period of time before you are eligible for a parole under the ordinary chain of events.

Defendant was nineteen years old at the time of sentencing.

Defendant subsequently moved to withdraw his plea of guilty. After a hearing, the motion was denied.

■ When a defendant moves to withdraw a plea of guilty prior to imposition of sentence, the trial judge's discretion in the matter should be exercised liberally in favor of withdrawal, unless it appears that the State has detrimentally relied upon the plea and the prosecution of the defendant has been thereby prejudiced. *State v. Losieau,* 266 N.W.2d 259 (S.D.1978); *State v. Doherty,* 261 N.W.2d 677 (S.D.1978). When, however, a defendant moves to withdraw his guilty plea after sentence has been imposed, the trial judge will set aside

the judgment of conviction and permit defendant to withdraw his plea only to correct manifest injustice. SDCL 23A–27–11.[1] The purpose of this stringent standard for post-sentence plea withdrawal motion is "to prevent a defendant from testing the weight of potential punishment, and then withdrawing the plea if he finds the sentence unexpectedly severe." *United States v. McKoy,* 645 F.2d 1037, 1040 n. 3 (D.C.Cir.1981).

■ Surprise or disappointment at the severity of a sentence does not alone constitute grounds for the withdrawal of a guilty plea after sentencing. *State v. Hanson,* 627 P.2d 53 (Utah 1981); *see generally* Annot. 9 A.L.R.Fed. 309 § 22 (1971). Cases of disappointed but unfounded expectations, however, must be distinguished from reasonable expectations arising from the government or statements from the court. *United States v. Crusco,* 536 F.2d 21 (3rd Cir.1976).

Defendant contends that his plea was not voluntary because it was entered in reliance upon the trial court's promise not to impose a life sentence, a promise that defendant reasonably understood foreclosing the imposition of a sentence that would greatly exceed his life expectancy.

As we recently held in *State v. Bolger,* 332 N.W.2d 718 (S.D.1983), we will look to the totality of the circumstance to determine whether a guilty plea was knowingly and voluntarily entered. We quoted the following test fashioned by the Court of Appeals for the Eighth Circuit in *Watkins v. Solem,* 571 F.2d 435, 437 (8th Cir.1978): "[t]he fundamental test is whether the plea of guilty was 'an intelligent act "done with sufficient awareness of the relevant cir-

cumstances and likely consequences." ' " *Bolger, supra,* at 720 n. 2.

■ The plea agreement here was accepted by the trial court on the record pursuant to SDCL 23A–7–9 and 23A–7–10, in contrast to the type of plea agreement that was present in *State v. Rich,* 305 N.W.2d 390 (S.D.1981), and in *State v. Doherty, supra.* Once having accepted the agreement, the trial court was bound to honor its promise to perform it, for we conclude that what the United States Supreme Court has said concerning the duty of the state to perform its part of a plea bargain applies with equal force to the trial court:

> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

*Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 433 (1971). *See also Mosher v. LaVallee,* 491 F.2d 1346 (2d Cir.1974), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974).

The question, then, is whether the 347-year sentence is something less than a life sentence when considered in the light of the statutory allowances for good time credit, SDCL 24–5–1 [2] and parole eligibility, SDCL 24–15–5.[3]

---

1. SDCL 23A–27–11 provides:

   A motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice a court after sentence may set aside a judgment of conviction and permit the defendant to withdraw his plea.

2. SDCL 24–5–1 provides:

   Every convict sentenced for any term less than life, and subject to the provisions of

§§ 24–2–17 and 24–2–18, shall be entitled to a deduction from his sentence for each year and pro rata for any part of a year as follows: for the first two years, a deduction of two months each year; for the third year, three months, for the fourth year and to the tenth, four months for each year; for the tenth year and for each year thereafter until the expiration of the period of the sentence as pronounced by the court, six months for each year.

■ Since defendant does not dispute them, we will accept as accurate the trial court's computations regarding good time credit and parole eligibility. The date of parole eligibility, however, is not to be equated with release from imprisonment. As the trial court commented at the hearing on the motion to withdraw the guilty plea, "Whether or not the Board of Pardons and Paroles releases him at that time, of course, depends on his record." Although it may be permissible for a trial judge to consider parole eligibility in sentencing, "the assumption that an offender will be paroled on a particular date is, at best, speculative," *Jackson v. State*, 616 P.2d 23, 24–25 (Alaska 1980). *See also Kelly v. State*, 622 P.2d 432 (Alaska 1981).

■ Defendant could reasonably have understood the trial court's promise not to impose a life sentence to mean that the sentence to be imposed would be of such length that he could look forward to a date certain when he would be entitled to be released from confinement as a matter of right. By conditioning the length of the sentence on the discretionary power of the board of pardons and paroles, the trial court imposed a sentence that did not comport with this expectation.

It should be made clear that we do not fault the trial court for attempting to impose a sentence that would be protective of society while at the same time not foreclosing the possibility of rehabilitation. Cf. *State v. Weiker*, 342 N.W.2d 7 (S.D.1983). Given the wantonness of the homicide with which defendant was charged and defendant's propensity for impulsive, dangerous conduct, a lengthy sentence was well warranted. Nor do we mean to suggest that the trial court in any way intentionally misled defendant or sought to impose a sentence that would contravene the assurances given defendant that a life sentence

would not be imposed. Our disagreement with the trial court stems from our belief that in the circumstances of this case the promise to impose a sentence of less than life imprisonment implied a sentence with a release date certain within the defendant's life expectancy rather than a release date contingent upon the exercise of discretionary authority by the board of pardons and paroles. Accordingly, we conclude that defendant should be allowed to withdraw his plea of guilty.

The judgment of conviction is reversed and the case is remanded to the circuit court for further proceedings.

FOSHEIM, C.J., and DUNN, J., concur.

MORGAN and HENDERSON, JJ., dissent.

MORGAN, Justice (dissenting).

I dissent.

I do not choose to speculate on what Lohnes had in mind when he so readily accepted the plea bargain, especially as to the length of sentence *he* anticipated. That is a quantitative analysis and there is nothing in the record to support it.

Lohnes bargained for and got a real benefit, a sentence with *parole eligibility*. He would have had no chance for parole had he been sentenced for life. SDCL 24–15–4 denies parole eligibility to prisoners sentenced to life imprisonment. As the Eighth Circuit Court of Appeals noted in *Helm v. Solem*, 684 F.2d 582, 585 (1982): "A life sentence without parole differs qualitatively from a sentence for a term of years ...."

Lohnes committed a cold-blooded heinous crime. Protection of the public is an accepted justification for incarceration—get the criminal off the street. Considering the good-time credit Lohnes received and his parole eligibility factor,* which is built

---

3. SDCL 24–15–5 provides in pertinent part:

   A person is eligible for parole, subject to § 24–15–4:

   (1) If convicted of a felony for the first time, when he has served one-fourth of the time for which he was sentenced;

   ....

---

* Lohnes' parole eligibility factor arises under SDCL 24–15–5 and is based on the fact that he

into our criminal justice system, I would commend the trial judge for performing his duty and I would affirm.

HENDERSON, Justice (dissenting).

Constitutional or statutory affrontery to the appellant's rights, do they exist here? I think not. Appellant was adequately advised of his rights, competently represented by counsel, voluntarily entered a plea of guilty, sentenced within the terms of the plea bargain, and can only be permitted to withdraw his plea after sentence "to correct manifest injustice." SDCL 23A–27–11. This question is begged: Is the sentence manifestly unjust for the crime perpetrated?

Sentencing Judge Jeffrey Davis went to great lengths to explain the sentence. Expressly, he indicated the sentence was not based upon revenge. Rather, on the record in open court, Judge Davis related the harsh prison sentence to deterrence, rehabilitation, and protection of society. In reading the sentencing transcript, it is evident that the sentencing judge had thoroughly contemplated the sentence and its ramifications. He had reviewed the psychological and psychiatric reports and called these to mind while sentencing. Furthermore, appellant's confession * was considered by the trial judge as part of the plea bargain. This confession, in *State v. Lohnes,* 324 N.W.2d 409 (S.D.1982), we held should be suppressed and reversed a second-degree murder conviction based partly on this confession. Judge Davis was obviously concerned over appellant's lack of impulse control and non-anxiety over doing wrong. Specifically, the rationale of Judge Davis was to accomplish a "long-term structured environment" in keeping with the recommendations of mental experts. At the time of the commission of the crime, appellant was an escapee from the South Dakota State Training School; clearly, appellant's life was following a journey of crime. This journey ended with an act of violence and instantaneous death inflicted upon an elderly motel operator in Rapid City, said violence resulting from appellant firing a slug from a stolen .243 Remington rifle into Mantzoros' head, just three to five inches from the skin surface.

Appellant and his counsel now find the sentence to be unexpectedly severe. They seek to accomplish that which is forbidden by *United States v. McKoy,* 645 F.2d 1037, 1040 (D.C.Cir.1981). Having tested the punishment waters, they wish to bail out of the plea bargain. The burden is on appellant to convince the courts, and particularly the trial judge, that manifest injustice will be done if the plea and conviction are not set aside. *United States v. Tiler,* 602 F.2d 30, 35 (2nd Cir.1979). Generally, to set aside the plea and conviction, it is further required that appellant-movant assert his innocence to get his foot in the door to establish "manifest injustice" within the meaning of Fed.R.Crim.P. 32(d). Said Federal criminal provision is identical to SDCL 23A–27–11. Here, appellant is not crying out that he is innocent but is indignant over the length of his sentence. Essentially, he is quarreling with the judge's discretion and he is telling the world that his sentence is manifestly unjust. How often, in law, the killer tells society that he is being treated unjustly. How outraged the killer can become when the steel doors slam shut and

---

had no prior felony convictions. SDCL 24–15–5(1) provides:

A person is eligible for parole, subject to § 24–15–4:

(1) If convicted of a felony for the first time, when he has served one-fourth of the time for which he was sentenced; . . . .

* The confession, Exhibit 41 in the murder conviction trial, reflects that appellant left the motel to specifically get a gun to shoot Mantzoros; that upon appellant's arrival at the motel, Mantzoros fled into a room. That, thereupon, appellant kicked in the door to that room and shot Mantzoros in the head. Awaiting trial, appellant wrote to his cousin, as reflected by the trial record, writing that he was shooting at the cops who tried to arrest him after the killing and declared therein: "I was having Fun." This letter mirrors his true feelings: Not one ounce of regret for his dastardly deed. I take judicial notice of the record of the first appeal under *State v. Cody,* 322 N.W.2d 11 (S.D.1982).

encase him behind bars. A confession exists here and a plea of guilty exists here. No protest of innocence is heard at this time.

Judge Davis should not be faulted for explaining, in detail, the rationale of his sentence. Nor, particularly, should his sentence be reversed upon the basis that he detailed the mechanics of the statutes of this state pertaining to computation of good time and the involvement of the Board of Pardons and Paroles. Judge Davis' comments were, to a great degree, invited by the supplication of the defense for a distinguishment and application of justice and mercy for appellant. Judge Davis expressed:

> If Mr. Lohnes is to be rehabilitated, the Board of Pardons and Parole will have to determine when. In the event he is not rehabilitated, it is my intention that society be protected for as long as possible.

This statement, in reality, was expressing the law and his judicial discretion to protect society from appellant. Modern theory of sentencing propounds that a sentencing judge recite his reasons for the sentence. This is to escape kingly judgments and serve as a basis for some type of review. Judge Davis' sentencing was detailed, rationale oriented, and declared with deep deliberative process.

Burton Lohnes did not get "life." And he did not get "death." Burton Lohnes took the life of an old man, who was minding his shop, and the curtain of eternity fell forever upon him. Lohnes, although in prison, has an opportunity to repent and rectify his life; as he does so, he awakens each morning in a living world with its never-ending ray of hope. All is not lost for Burton Lohnes. In parole, he has hope. In commutation of sentence, he has hope. In living each day, he has hope. In serving his time, he may earn his salvation. If a good prisoner, he can petition for a commutation. In all of this, he has hope. Equating his life of hope and rehabilitation behind bars on the scale of justice—with the life of an innocent old man which he callously took—I come to the ultimate conclusion that there was no manifest injustice in the sentencing process or the sentence. This was a crime of enormity and its punishment cannot be pierced nor eradicated with a lance of legal logic. I would affirm.