**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Philip P. WIKA, Defendant and Appellant.**

No. 16927.

Supreme Court of South Dakota.

Considered on Briefs Sept. 21, 1990.

Decided Jan. 2, 1991.

David D. Wiest, Asst. Atty. Gen., Pierre, (Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief), for plaintiff and appellee.

Steve Miller, Sioux Falls, for defendant and appellant.

MORGAN, Justice.

Philip P. Wika (Wika) appeals from a judgment of conviction for sexual contact with a child under the age of 16 and the denial of his motion to withdraw his nolo contendere plea to the same charge. We affirm.

## FACTS

On October 13, 1988, Wika was charged in an indictment with two counts of sexual contact with a child under the age of 16 (SDCL 22–22–7 [1]) and one count of first degree rape in violation of SDCL 22–22–1(4) [2] (sexual penetration with person less

---

1. In 1988, SDCL 22–22–7 provided:
   Any person, fourteen years of age or older, who knowingly engages in sexual contact with another person, other than his spouse when such other person is under the age of sixteen years is guilty of a Class 4 felony. If the actor is less than three years older than the other person, he is guilty of a Class 1 misdemeanor.
   We note that this statute has been amended several times since 1988. *See* 1989 S.D.Sess.L. ch. 194, § 1 and ch. 195, § 1; 1990 S.D.Sess.L. ch. 162, § 2.

2. In 1988, SDCL 22–22–1(4) provided in pertinent part:
   Rape is an act of sexual penetration accomplished with any person other than the actor's spouse under any one or more of the following circumstances:
   
   \*    \*    \*    \*    \*    \*
   
   (4) Where the victim is less than ten years of age[.]
   We note that this statute has also been amended several times since 1988. *See* 1989 S.D.Sess.L.

than ten years of age). The charges were based upon allegations concerning Wika's conduct with his two minor granddaughters. Wika entered not guilty pleas to all three charges and retained counsel, an attorney with some nineteen years of experience, to represent him.

Subsequent to his retention, counsel met with Wika several times to discuss the charges, Wika's rights and the potential penalties. He filed numerous motions on Wika's behalf. He also secured the services of a private investigator to look into the charges. Eventually, counsel proposed a possible plea bargain to Wika.

The plea bargain involved Wika's entry of a nolo contendere plea to one of the sexual contact charges. Counsel explained the nolo contendere plea to Wika, its difference from a guilty plea and that it would not be an admission of guilt. This was a concern of Wika's, who maintained his innocence of the charges against him. Counsel further explained that under the terms of the plea bargain probation would be left up to the court and that Wika would probably have to attend counseling and would have to cooperate and complete any counseling requirements that the court set forth. After these explanations, it appeared to counsel that Wika understood the plea and he ultimately agreed to accept the plea bargain.

The change of plea hearing was conducted before Circuit Judge Amundson. The deputy state's attorney outlined the terms of the plea agreement: that Wika plead nolo contendere to one count of sexual contact with a child under age sixteen; that the other two counts in the indictment be dismissed; that there be no actual jail time; that imposition of sentence be suspended; and, that the other terms of the fine and probation be left up to the court. Judge Amundson ordered a presentence investigation and delayed acceptance of the plea and sentencing until after completion of the report.

Sentencing was conducted on February 3, 1989, by Circuit Judge Hurd. Judge Hurd entered his order suspending imposi-

ch. 194, § 2; 1990 S.D.Sess.L. ch. 161, § 2 and

tion of sentence and placing Wika on supervised probation for life. Condition three of the conditions of probation provided, "[t]hat the defendant abide by any and all counseling that is recommended through Court Services during the first three years of probation." Thereafter, Wika was placed in a sexual offender group therapy program.

On July 31, 1989, state filed a motion to revoke Wika's probation. The motion was based upon a probation violation report submitted by Wika's court services officer. The report alleged that Wika had been terminated from the sexual offender therapy group, "due to his continued lack of cooperation, denial, and disruptive attitude."

Prior to the probation revocation hearing, Wika, through a newly retained attorney, filed a motion to withdraw his nolo contendere plea. Wika contended that he should be allowed to withdraw his plea because it was not freely and voluntarily entered.

A hearing on state's motion to revoke Wika's probation and on Wika's motion to withdraw his plea was held on November 15, 1989. After the hearing, the trial court entered its order revoking probation and sentencing Wika to ten years in the penitentiary. The trial court also entered findings of fact, conclusions of law and an order denying Wika's motion to withdraw his plea. Wika appeals.

## ISSUE

WHETHER THE CIRCUIT COURT ABUSED ITS DISCRETION IN DENYING WIKA'S MOTION TO WITHDRAW HIS NOLO CONTENDERE PLEA?

SDCL 23A–27–11 on withdrawal of pleas provides:

A motion to withdraw a plea of guilty *or nolo contendere* may be made only before sentence is imposed *or imposition of sentence is suspended;* but to correct manifest injustice a court after sentence

ch. 162, § 1.

may set aside a judgment of conviction and permit the defendant to withdraw his plea. (emphasis added).

■ The statutory language is clear. It allows a motion to withdraw a nolo contendere plea only before sentence is imposed *or imposition of sentence is suspended.* Thereafter, a stringent standard is applied in permitting the withdrawal of a nolo contendere plea and withdrawal will be allowed only to correct a manifest injustice. We explained this distinction between pre- and post-sentence plea withdrawal in *State v. Lohnes,* 344 N.W.2d 686 (S.D.1984):

> When a defendant moves to withdraw a plea of guilty prior to imposition of sentence, the trial judge's discretion in the matter should be exercised liberally in favor of withdrawal, unless it appears that the State has detrimentally relied upon the plea and the prosecution of the defendant has been thereby prejudiced. When, however, a defendant moves to withdraw his guilty plea after sentence has been imposed, the trial judge will set aside the judgment of conviction and permit defendant to withdraw his plea only to correct manifest injustice. The purpose of this stringent standard for post-sentence plea withdrawal motion is "to prevent a defendant from testing the weight of potential punishment, and then withdrawing the plea if he finds the sentence unexpectedly severe."

*Id.* at 687–88 (citations and footnote omitted). Here, Wika moved to withdraw his nolo contendere plea *after* imposition of his sentence was suspended. Therefore, we hold that the stringent standard of SDCL 23A–27–11 and *Lohnes* should be applied and that Wika could only be allowed to withdraw his nolo contendere plea by establishing that withdrawal was necessary to correct a manifest injustice.

In *Lohnes* we held that the trial court abused its discretion in denying the defendant's post-sentence plea withdrawal motion. We reached this conclusion on the basis that the defendant's plea was not voluntarily entered because it was not entered with sufficient awareness of the likely consequences of the plea. Wika similar-ly argues that his plea was not voluntarily entered because it was not made with sufficient awareness of the consequence that he would have to undergo counseling and admit his guilt in therapy. He asserts that the only reason he entered the nolo contendere plea was so that he would not have to admit his guilt and that had he known of that consequence he would never have entered the plea. He further asserts that his attorney should have told him of the possibility that he would have to admit his guilt in therapy and because of his attorney's failure in that respect he should have been allowed to withdraw his plea. In essence, therefore, Wika challenges the voluntariness of his plea based upon ineffectiveness of his counsel in the advice he gave him on the consequences of the plea.

■ Ordinarily, claims of ineffective assistance of counsel will not be reviewed on direct appeal. *Luna v. Solem,* 411 N.W.2d 656 (S.D.1987). Here, however, Wika's contentions concerning the voluntariness of his plea are so intertwined with his argument regarding the advice his counsel gave him on the plea that we deem it appropriate to address the effectiveness of his counsel's representation in this regard. Where a claim of ineffective assistance of counsel is reviewed on direct appeal the review is limited to determining whether the representation was so casual that the record evinces a "manifest usurpation" of the appellant's constitutional rights. *Luna,* 411 N.W.2d at 659. Here, we discern no usurpation of Wika's constitutional rights resulting from his counsel's failure to advise him of the requirements of the counseling sessions he would have to attend as a condition of probation.

At the outset, we observe that Wika's counsel did not bear the sole responsibility for insuring that Wika understood the consequences of his plea. The ultimate burden in this regard rested with the trial court. In *Gregory v. Solem,* 449 N.W.2d 827 (S.D.1989) a habeas corpus petitioner raised contentions concerning the effectiveness of his counsel's representation claiming his counsel had failed to explain the elements of the crime with which he was charged and to which he had pled guilty. We noted the rule that before a plea can be

voluntarily entered, the defendant must possess an understanding of the nature of the charge and further noted that, "[t]he ultimate burden of assuring that a defendant is advised of the nature of the charge against him falls upon the trial court *and not upon the defendant's attorney.*" *Gregory,* 449 N.W.2d at 832 n. 7. (emphasis added).

We based our premise in *Gregory,* on our decision in *Application of Garritsen,* 376 N.W.2d 575 (S.D.1985) wherein we held:

> [T]he record must indicate that the pleading defendant understood the nature *and consequences of his plea.* The record must indicate that the defendant was informed of his right to a jury trial in the county in which the crime was committed. The record must also indicate a factual basis for a guilty plea before it is accepted. *The circuit court cannot assume counsel has so advised the defendant* and the record of the preliminary hearing cannot substitute for the circuit court's duty to actively participate by informing and canvassing the defendant, so as to make certain he understands and knows his rights and the nature *and consequences of his plea.*

*Id.* at 577 (emphasis added) (citations omitted). Thus, just as we noted in *Gregory* that the ultimate burden of advising the defendant of the nature of the charge falls upon the trial court, we similarly conclude that the ultimate burden of advising a defendant of the consequences of his plea falls upon the trial court and not the defendant's attorney.

In this vein, however, we have held that, "it is not necessary for a court to inform a defendant of the collateral consequences of a guilty plea ... in order for a plea to be intelligently and voluntarily entered." *Gregory v. State,* 353 N.W.2d 777, 781 (S.D.1984).

> "The distinction between 'direct' and 'collateral' consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment."

*George v. Black,* 732 F.2d 108, 110 (8th Cir.1984) (quoting *Cuthrell v. Director,* *Patuxent Institution,* 475 F.2d 1364, 1366 (4th Cir.1973)).

Here, we fail to perceive how the requirements of the counseling sessions had a definite, immediate or automatic effect on the range of Wika's punishment. Rather, it was Wika's failure to fulfill the counseling requirements that ultimately affected his punishment by leading to the revocation of his probation. Such a result, however, was neither definite nor immediate at the time he entered his plea. In this respect we note that it was not only Wika's refusal to admit his guilt that led to his expulsion from the therapy group and, later, the revocation of his probation. His therapist's report also indicates that he had disdain for being in the group; that he frequently mentioned not needing or wanting to be there; that he often displayed anger to group feedback; that he openly referred to the group as "the nut house"; and, that on the day he was expelled from the group, he verbally harassed the group leader and demeaned the group with his usual opinion of them. Clearly this activity contravened the specific advice Wika did receive from his attorney that he would have to cooperate in the counseling requirements.

Moreover, the revocation of Wika's probation was not automatic but, the product of a distinct legal proceeding in which he had the right to a hearing, notice of the hearing, an opportunity to testify and present evidence on his own behalf and the right to cross examination of state's witnesses. *See George, supra.* Thus, we conclude that the requirements of the counseling sessions were merely collateral consequences of Wika's nolo contendere plea of which no advice was necessary prior to entry of his plea.

### ISSUE TWO

WHETHER THE TRIAL COURT ERRED IN FAILING TO AFFORD WIKA A FULL OPPORTUNITY TO DEVELOP THE ISSUE OF INEFFECTIVE ASSISTANCE OF COUNSEL DURING THE HEARING ON WIKA'S MOTION TO WITHDRAW HIS PLEA?

█ Wika's present counsel argues that he was not afforded a full opportunity to

develop the issue of ineffective assistance of counsel during the hearing on this matter. He contends that when he attempted to examine Wika's first attorney on the facts relevant to the competence of his advice, the trial court disallowed the questioning.

This contention is simply not supported by the record. The pages of the motion hearing/sentencing transcript referenced by Wika's present counsel in support of this argument reveal his cross examination of Wika's first attorney concerning his advice on the plea bargain and the possibility of counseling. He asked the attorney if he specifically mentioned a particular sexual offender's group. State objected to the question and the trial court *overruled the objection* and repeated that the objection was *overruled*. Wika's present counsel then went on to ask if Wika was told that he would have to admit guilt in counseling to which his first attorney responded in the negative. At that point, Wika's present counsel stated that he had no further questions. Thus, the trial court never prohibited him from asking Wika's first attorney questions concerning the advice he had or had not given to Wika. The contentions in this regard are meritless.

Affirmed.

MILLER, C.J., and WUEST and SABERS, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

Nolo contendere is a latin phrase which means "I will not contest it." A plea of this nature leaves the defendant in a position wherein he neither admits nor denies the charges.

Wika asked his first lawyer, not the lawyer representing him in this appeal, what he, the lawyer would do, if he was in Wika's shoes. His lawyer told him that he would enter a plea of nolo contendere. Few lawyers know the ramifications of a nolo contendere plea. It is a quaint animal in the criminal law. Surely, a 72–year–old man, unlearned in the law, would not know the ramifications of a nolo contendere plea

and would have to rely upon his lawyer's advice.

Picture, in your mind's eye, a 72–year–old grandfather being accused of sexually contacting and raping his granddaughters. Consider the enormity of his fear of entering a plea of guilty, particularly when he, the grandfather, has steadfastly maintained that he did not molest his granddaughters.

Though there appears to be a strong case against Wika for his misdeeds, throughout the first lawyer's representation of Wika, Wika insisted that he was innocent and never once acknowledged guilt of the charges proffered against him. His first lawyer, under oath, testified that Wika had a difficult time understanding the proceedings. Upon the date set for his nolo contendere plea, while on the courthouse steps, Wika maintained his innocence.

Most specifically, the first lawyer testified at a motions hearing, that Wika and he discussed, on several occasions, plea agreement proposals, but Wika refused any type of plea which would result in admission that he had molested his granddaughters. Further, the first lawyer testified, concerning the nolo contendere plea, that he explained the difference between a "guilty" plea and a "nolo contendere" plea. Following that discussion, Wika was still reluctant to enter a nolo contendere plea. In fairness to the first lawyer, he explained the sentencing aspects of the agreement including the fact that Wika would serve no jail time and that there would be a probation requirement that Wika obtain counseling. Apparently, the first lawyer explained that Wika "might" be required to attend such sessions. Unfortunately, and it is totally undisputed, the first lawyer never explained that the "counseling" requirement would include that Wika would have to admit his guilt by admitting that he sexually violated the bodies of his granddaughters. Further, the first lawyer never discovered the specific ramifications of the counseling by questioning the court services officer or the Southeastern Mental Health Center's Sexual Offender group which is located at Sioux Falls, South Da-

kota. I certainly appreciate that no defendant is entitled to a perfect lawyer nor to a perfect defense. However, in this case, in order to satisfy a knowing and voluntary plea, Wika should have known, when he entered the plea, that down the road he would have to admit his guilt.

It appears to me, from reviewing this case, that the sole motivating factor to entering the nolo contendere plea was that Wika would never have to admit guilt. In carefully reviewing these briefs, my conclusion is that the State of South Dakota has never disputed or challenged, by its brief, the sole motivating factor on entering and receiving a nolo contendere plea. According to the motion hearings transcript, at pages 27–29, it was precisely because the first lawyer knew that Wika refused to acknowledge guilt, that the nolo contendere was tendered as a part of the plea offer by the State of South Dakota. Little did Wika know that later, he would have to acknowledge his guilt in open meetings, before convicted sex offenders, and that, if he refused to do so, he would be terminated from the counseling sessions and would face a revocation of his probation.

So adamant was he concerning his innocence, and so stricken by conclusion that his lawyer and the judicial system had done him in on a plea bargain, he refused to be "cooperative" at the counseling sessions, i.e., he would refuse to admit his guilt and refuse to participate in discussions which would require him to admit to molesting his granddaughters. This record shows that his first lawyer, the trial-level lawyer, absolutely knew that, just minutes before the entry of the nolo contendere plea, defendant was maintaining, with gusto, his innocence and was questioning whether he should enter a nolo contendere plea.

I certainly agree that this case must be decided upon the phraseology of SDCL 23A–27–11. In *State v. Bolger*, 332 N.W.2d 718, 720 (S.D.1983), this Court indicated the scope of review concerning the very type of case before us; we stated we would "look at the totality of the circumstances to determine whether a [no contest] plea was made knowingly and voluntarily."

If we deduce that Wika's plea was involuntary, then we must, perforce, conclude that there is a "manifest injustice" under SDCL 23A–27–11. In my opinion, Wika's nolo contendere plea was neither knowing nor voluntary simply because it was a completely mistaken understanding of the plea agreement. Surely, if his plea of nolo contendere was made with the understanding that he would not have to admit guilt, the probation terms requiring him to admit his guilt are 100% in conflict. A fundamental promise of the plea bargain was broken without his knowledge because his first lawyer did not explain that he would have to admit these deeds in counseling sessions. This case falls squarely within the four corners of the plea agreement which was stricken by this Court in *State v. Lohnes*, 344 N.W.2d 686 (S.D.1984). In *Lohnes*, the trial court refused to permit Lohnes to withdraw his plea, even though he made this request based upon a sentence of 347 years when he had received a promise that he would not be sentenced to life in prison. In reversing, we held that Lohnes "could reasonably have understood" that the plea agreement foreclosed a 347 year sentence. Using the rationale of *Lohnes*, my leap of legal logic is that Wika was entitled to a reasonable understanding that he would never have to admit to the acts of which he was accused.

In closing, I am not disparaging the entire legal defense strategy of the first lawyer. I am expressing that under the totality of the circumstances, the plea of nolo contendere herein by Wika was not knowingly and voluntarily entered. Wika should have been permitted to withdraw his plea and, therefore, I respectfully dissent. This would afford him the right to a jury trial.