STATE of South Dakota, Plaintiff
and Appellee,

v.

Daniel R. COBB, Defendant
and Appellant.

No. 17503.

Supreme Court of South Dakota.

Considered on Briefs Dec. 5, 1991.

Decided Jan. 8, 1992.

Mark Barnett, Atty. Gen., Ann C. Meyer, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Bruce A. Hubbard of Hansen & Hubbard, Sturgis, for defendant and appellant.

PER CURIAM.

Daniel Cobb appeals an order denying his motion to withdraw a guilty plea of first degree murder. Under the plea agreement, two other criminal counts were dismissed. Cobb was sentenced to life imprisonment without parole. We affirm.

FACTS

A grand jury indicted Cobb for: (1) First Degree Murder—Premeditated Design; (2) First Degree Murder—Felony Murder; and, (3) First Degree Robbery. All three counts arose out of an incident in September of 1990. One night while Cobb was gambling in Deadwood he wrote several insufficient funds checks to the Windflower Casino. Later that evening he returned with a shotgun and demanded return of his insufficient funds checks. Cobb shot and killed the owner of the Windflower and took the checks and cash from the register.

Cobb reached a plea agreement with State. He agreed to plead guilty to First Degree Murder—Felony Murder. State agreed to dismiss the other charges and agreed not to seek the death penalty. Cobb pled guilty to Felony Murder before Judge Warren G. Johnson. During the plea hearing the following discussion took place:

State's Attorney (Jeffry Bloomberg): The Count 2 is a Class A Felony punishable

by life imprisonment, and I believe the Defendant would not be eligible for parole on that particular sentence.

Cobb's Attorney (Robert Van Norman): That's correct, Your Honor.

Judge Johnson: Okay. As I understand it, a Class A is punishable by life or death, and under 22–16–4, murder committed during the perpetration of rape, arson, robbery, burglary, kidnapping—and then it names a few other things—is murder in the first degree. *Murder in the first degree is a Class A felony punishable by either life imprisonment without parole or death.* *Do you understand that, Mr Cobb?* (emphasis added)

Mr. Cobb: That's understood, yes.

Judge Johnson: I think that was probably explained to you by Judge Johns at the outset, and I just want you to understand exactly what the law says. Any questions so far?

Mr. Cobb: No.

Judge Johnson: Any questions as far as what the State would have to prove as to Count 2?

Mr. Cobb: No, sir.

Judge Johnson: Any questions as far as the sentence that could be imposed in this case, if you plead guilty to felony murder? In other words, first degree murder? I will be sending you to prison for the rest of your life. I have no problem at all making the sentence effective as of the date of—what was the arrest date?

Cobb's Attorney: September 12, 1990, he was put in custody.

Judge Johnson: I have no problem with that. But the only way you would be paroled is if your sentence was at some point commuted to a term of years by the Department of Corrections and the Governor; do you understand that?

Mr. Cobb: I understand.

Judge Johnson carefully explained to Cobb that pleading guilty was a waiver of his constitutional rights. Judge Johnson also carefully and thoroughly described the constitutional rights Cobb would be waiving. *See Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

Cobb described the factual basis for his plea of guilty. Judge Johnson accepted the guilty plea and sentenced Cobb to life imprisonment without parole.

Approximately one month later the trial court appointed new counsel to represent Cobb. Cobb filed a motion to withdraw his guilty plea. His sole argument was that he had not "knowingly, voluntarily and intelligently" pled guilty because he mistakenly believed he would still be able to appeal the trial court's pretrial rulings and that pleading guilty would give him "a better chance of getting out of prison sooner." Cobb submitted an affidavit in support of his motion. The trial court denied the motion to withdraw the guilty plea. Cobb appeals from the order denying his motion to withdraw the guilty plea.

## DECISION

SDCL 23A–27–11 establishes the standards relevant to withdrawal of a guilty plea. It provides:

A motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice a court after sentence may set aside a judgment of conviction and permit the defendant to withdraw his plea.

SDCL 23A–27–11.

The trial court has discretion to allow a defendant to withdraw a guilty plea. *State v. Grosh,* 387 N.W.2d 503 (S.D. 1986). This discretion should be exercised liberally in favor of withdrawal if sentence has not yet been imposed. *State v. Lohnes* 344 N.W.2d 686, 687 (S.D.1984). On the other hand, a criminal defendant should not be allowed easily to withdraw a plea after sentence has already been imposed. *Id.* at 687–88. A more "stringent standard" is applied after sentence has been imposed "to prevent a defendant from testing the weight of potential punishment, and then withdrawing the plea if he finds the sentence unexpectedly severe." *Id.* at 688.

Once sentence has been imposed the plea can only be withdrawn to correct man-

ifest injustice. *Id.* at 687. SDCL 23A–27–11. "Surprise or disappointment at the severity of a sentence does not alone constitute grounds for the withdrawal of a guilty plea after sentencing. Cases of disappointed but unfounded expectations, however, must be distinguished from reasonable expectations arising from the government or statements from the court." *Id.* at 688. (citations omitted). For example, in *Lohnes* the trial judge assured the defendant that if he pled guilty he would not receive life imprisonment. Instead, the trial judge sentenced the defendant to 347 years in prison. This Court reversed the sentence.

█ The only question for this Court is whether the trial court abused its discretion in determining that no "manifest injustice" existed which would justify allowing Cobb to withdraw his guilty plea. Cobb claims there was manifest injustice because he thought that pleading guilty would give him the possibility of parole and because he thought he would still be able to appeal the trial court's pretrial orders.

Because of the transcript excerpt included above, it is clear Cobb's claim that he thought he would get out on parole is without support. Although we do not know what his attorneys told him—we do know that the trial judge specifically explained that a guilty plea would result in a sentence of life in prison without parole.

Cobb also claims he believed he would still be able to appeal the trial court's pretrial orders even though he pled guilty.[1] Since there are no findings of fact, we do not know if the trial court concluded that Cobb believed he could appeal. However, even if the trial court viewed the allegations in a light most favorable to Cobb, a judicial mind could have reasonably concluded that no "manifest injustice" existed. Cobb does not allege that State or the trial court told him that he would still be able to

appeal. He only alleges that his attorneys erroneously told him that he could still appeal.[2] The trial court thoroughly informed Cobb of his *Boykin* rights and concluded that he was waiving them knowingly, voluntarily and intelligently.

The trial court did not abuse its discretion in determining that no "manifest injustice" existed to justify allowing Cobb to withdraw his guilty plea after sentencing. We affirm.

MILLER, C.J., and WUEST, HENDERSON, SABERS, and AMUNDSON, JJ., participating.

---

1. When a defendant pleads guilty or nolo contendere the defendant also waives the right to appeal any pretrial rulings. *State v. Jordan,* 261 N.W.2d 126 (S.D.1978).

2. Cobb did not specifically allege ineffective assistance of counsel. State apparently believes he did. We do not have a sufficient record

before us to determine whether Cobb received ineffective assistance of counsel. Ineffective assistance of counsel claims are preferably handled in habeas corpus actions rather than direct appeals. *See State v. Jett,* 474 N.W.2d 741 (S.D. 1991).