STATE of South Dakota, Plaintiff
and Appellee,

v.

Fabian CHASE IN WINTER,
Defendant and Appellant.

No. 18720.

Supreme Court of South Dakota.

Considered on Briefs Dec. 1, 1994.

Decided June 28, 1995.

Mark Barnett, Atty. Gen., Todd A. Love, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Frank A. Bettmann of Finch, Bettman, Maks, Rapid City, for defendant and appellant.

PER CURIAM.

Pursuant to a plea agreement, Fabian Curtis Chase in Winter (Chase in Winter) pled guilty but mentally ill to kidnapping, SDCL 22–19–1(3), and aggravated assault, SDCL 22–18–1.1(5). The seven remaining counts * of the information were dismissed. He was sentenced to serve two hundred years in the penitentiary on the kidnapping conviction and a concurrent fifteen years on the aggravated assault conviction.

On appeal, Chase in Winter contends that the two-hundred-year sentence is an abuse of discretion and violates the Eighth Amendment's proscription against cruel and unusual punishment. We affirm.

FACTS

Chase in Winter is an Indian male who was born in 1972. He was raised in a home where drinking and violence were common and he was physically, emotionally, and perhaps sexually abused by his alcoholic parents. He began drinking at age eleven.

Since the age of thirteen, Chase in Winter has been routinely examined for alcohol addiction as well as mental and emotional problems which include violence, threats of violence, and a propensity for being involved with pre-pubescent males. He has been placed in at least three separate facilities due to these problems and has also taken anti-depressant and anti-psychotic medications. Treatment has met with little success due to Chase in Winter's lack of interest.

Between 1986 and 1989 Chase in Winter was arrested eight times on juvenile delinquency charges, assault and battery, and tribal pickup orders. He served in juvenile detention facilities. He ran away from one facility and stole a car. The grand theft auto charge was not formally disposed of.

In 1989, seventeen-year-old Chase in Winter was engaged in satanic worship, was high on marijuana, and was drinking heavily when he took his eleven-year-old male cousin hostage at knife point. Throughout the two day ordeal, Chase in Winter choked the victim, held a knife to the victim's throat, sodomized him, and forced the victim to perform oral sex on Chase in Winter. Chase in Winter was sentenced on one count of aggravated sexual abuse in a federal juvenile delinquency proceeding. He violated his probation and was committed to the custody of the Bureau of Prisons until age twenty-one.

The incidents leading to the two-hundred-year sentence Chase in Winter is challenging began on February 4, 1993. The facts are strikingly similar to those in his previous federal juvenile case.

Chase in Winter drove to Rapid City with his sister, argued with her, and began drinking heavily. He called up thirteen-year-old

* Simple assault (one count), aggravated assault (one count), sexual contact with a child under the age of sixteen (three counts), second degree rape (one count), and attempted second degree rape (one count).

DGB, a male acquaintance who was small for his age, and offered to feed him at Wendy's.

The two met, and, rather than eating, went to K–Mart where Chase in Winter told DGB that he would buy him a belated Christmas gift. At K–Mart, Chase in Winter took DGB to a bathroom, held a knife to his neck, and threatened to kill DGB if he did not travel to Oglala with him.

Chase in Winter and DGB began to walk to Oglala. At the bridge by Sioux Pottery, Chase in Winter choked DGB with both hands for five seconds. As the journey continued, they stopped by some radio towers. Chase in Winter gave DGB the choice of being stabbed to death or beaten to death. DGB tried to run away, made it to a train, and was captured. Chase in Winter held his knife to DGB's temple and threatened to kill him. He took off DGB's shirt and jacket, exposing him to the blizzard conditions for ten minutes until DGB agreed to continue to Oglala.

When they reached a billboard, Chase in Winter dropped his pants and had DGB touch his penis and masturbate him until he ejaculated. Chase in Winter also fondled DGB's penis through DGB's clothes.

The journey continued until they reached a barn. Chase in Winter made DGB remove his pants and lie face down on some bushes. After Chase in Winter's attempt to anally penetrate DGB failed, he forced DGB to perform oral sex until he ejaculated in DGB's mouth. The two then continued the walk to Oglala.

Chase in Winter pled guilty to one count of kidnapping and one count of aggravated assault. As a part of the plea agreement, the state dismissed the remaining seven counts. It agreed not to pursue any other offenses stemming from this incident. It also agreed not to pursue habitual offender charges and "not specifically be requesting a life sentence to be imposed."

Prior to sentencing an extensive presentence report was prepared. It noted that a week after the incident with DGB, Chase in Winter pled guilty to federal charges of cruelty to a minor, assault and battery, and public intoxication. The court services offi-cer noted that Chase in Winter felt little remorse for the DGB incident and believed he would simply forget about DGB. The officer noted that long term therapy had not been successful, but was needed.

The sentencing judge also received letters from the chief investigator of this case, DGB, and DGB's parents. The investigator wrote, in part,

I will put this to you as succinctly as possible. Fabian Chase in Winter is the most dangerous person I have ever personally known. He is a predator. He has no regard for the lives of others.

Fabian told me he thought if he killed someone it would make him feel better. I believe if given the opportunity Fabian would kill someone to relieve his tensions as easily as you or I would take an aspirin for a headache.

DGB expressed his fear, his lack of trust, and his sadness. His parents described DGB and their trauma following the incident. DGB daily takes Prozac and Ritalin and is in daily counseling. He has been expelled from several schools because of behavioral problems and has been hospitalized in two mental facilities due to fears for his safety and that of his family. They describe their twenty years as a lower income family which was nearly broken apart by the ordeal.

The trial court, in imposing sentence, addressed Chase in Winter:

THE COURT: This case presents a number of anomalies to me, Mr. Chase in Winter. You're 21 years old. The rest of your life is ahead of you. You've only had one felony conviction, this one today. By rights, that means you should be given opportunities to redeem yourself and to prove your worth and to change your way of life and your conduct. By rights, you should be given the opportunity to show that you can grow and to learn.

You've been a victim. You were horribly abused by your parents. No questions about that either in my mind. That doesn't absolve you of your crime. That doesn't change the significance of your crime. That doesn't diminish the importance of your crime. That helps us under-

stand it, but that doesn't make you any less accountable. You're still fully and completely accountable for putting [DGB] in utter fear of his life. You almost killed him during part of this process. You molested him horribly.

You're right. He will never recover. He can't recover because the pain of what you've inflicted upon him is irredeemable, just as the pain that your parents inflicted upon you is irredeemable. You can't change that. You can't go back and erase what's happened to you and you can't erase what's happened to DGB. And you scare me. I am worried about you and I don't know for sure what remedy there is for someone who has been put in your circumstances. And you have been put in your circumstance by us, by the community, by your parents, and we are all responsible to a degree. But you're finally responsible. No one's to blame. You're accountable at least. Everyone's to blame, but you're accountable and you will be held accountable and you will pay the price.

I don't mean to be lecturing to you, but it's a frustrating, difficult situation and I'm torn between two alternatives. And I don't know what is best. I guess my real frustration is whether or not there is an opportunity for you to receive help that will give you the means to avoid jeopardizing another individual as you have jeopardized DGB. And I'm not sure that our system is capable of providing you what it needs to provide. I don't know that any system is capable of doing that.

And I have not heard any significant appreciation from you of the evil you've inflicted upon DGB, of the horrible condition you have imposed upon DGB. I didn't expect any. It wouldn't have mattered. You're probably right. I wouldn't have believed you anyway probably at this stage of the proceeding.

You're pleading guilty but mentally ill. I've got a letter from Dr. Manlove saying that you are mentally ill. You're susceptible to treatment. You're borderline personality with alcohol dependence. You require long-term psychotherapy before you would be susceptible to change. But there is a possibility of some help for you some place, and I cannot in my mind feel that a 21–year–old is irredeemable. We all have an opportunity to attain grace and redemption and to change. I believe that.

I will not, however, jeopardize other individuals while you're in the process of trying to develop that if indeed you're able to develop that at all.

At this time it will be the judgment of this Court you be sentenced to 200 years in the South Dakota State Penitentiary, ordered to make restitution to the victim as we establish at a latter time as counsel may wish to do, and pay your attorneys fees and the cost of these proceedings.

The court also wrote to the Board of Pardons and Paroles:

I have just recently sentenced Mr. Chase in Winter to 200 years in the South Dakota State Penitentiary. It was a difficult sentence in light of Mr. Chase in Winter's age. I harbor a belief that all of us have the opportunity to redeem ourselves in this world, if not in the next. Mr. Chase in Winter is however, a man for who I hold out little hope. I came very close to imposing a life sentence on him. My reservation was that he was only 21 years of age with a psychiatric problem and I felt there should be some small window of opportunity available for him in the event that some extraordinary circumstances should occur and he should truly understand the gravity of his crime and appropriately deal with his anger and depression, not to mention his psychiatric problems. While this is his first offense of record, he had a very similar offense previously and showed little remorse for his crime. I am enclosing with this letter, a copy of a letter I received from Lynn McLane with the Pennington County Sheriff's Office. I too harbor serious concerns relating to the dangerousness of Mr. Chase in Winter. I have rarely taken it upon myself to send a letter to the Board of Pardons & Paroles; in this case, however, I felt an exception was warranted. Before even the slightest consideration is given to paroling Mr. Chase in Winter, I ask you to very, very, very scrupulously examine his

status to determine whether or not he could in the future victimize other children, perhaps kill somebody. It is frankly my assumption that he will be in custody for the rest of his life. However, I felt that he should have some hope in light of his very young age.

Following sentencing Chase in Winter filed a motion seeking to have the sentence reconsidered and seeking money to pay for sentencing statistics from the Unified Judicial System. The motions were denied. The trial court addressed again why it imposed the two-hundred-year sentence. The court explained, in part:

> And again I can't—in 22 years as a judge, I don't know that I've seen a crime more horrific in terms of the impact upon a victim than this case, nor have I seen an individual more frightening to this Court in terms of the possible consequences of one like him being at large and preying upon other children and killing other children, which indeed he could well have done during the course of this incident. He, in and of himself, is a highly dangerous individual, which is the basis upon the judgment.

## ISSUE

DOES CHASE IN WINTER'S TWO-HUNDRED–YEAR SENTENCE CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT?

The principles governing sentence review are well known and were reiterated in *State v. Ferguson*, 519 N.W.2d 50, 53–54 (S.D. 1994):

> "On appeal, we first determine whether the sentence 'shocks the conscience' or is so disproportionate to the crime that it activates the Eighth Amendment 'within and without jurisdiction' proportionality tests." *State v. Lykken*, 484 N.W.2d 869, 879 (S.D.1992); *State v. Basker*, 468 N.W.2d 413, 418 (S.D.1991). *Accord State v. Andrews*, 393 N.W.2d 76, 82–83 (S.D.1986); *Weiker II* [*State v. Weiker*], 366 N.W.2d [823] at 827 (S.D.1985). "Absent a sentence which is so excessive in duration that it shocks the conscience of the court, it is well settled in South

Dakota that a sentence within statutory limits is not reviewable on appeal." *Lykken*, 484 N.W.2d at 879; *State v. Janssen*, 371 N.W.2d 353, 356 (S.D.1985) (citing cases). Stated alternatively, we will only engage in extensive review of a sentence where we have first determined the sentence was manifestly disproportionate to the crime. *State v. Holloway*, 482 N.W.2d 306, 310–311 (S.D.1992); *Weiker II*, 366 N.W.2d at 827. "If a sentence is manifestly disproportionate to the crime, [in light of the gravity of the offense and harshness of the penalty] ... then the other two factors listed in *Helm* [463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)] [sentence imposed on others in the same jurisdiction and in other jurisdictions] become more focused and require extensive review." *Weiker II*, 366 N.W.2d at 827. See also *Helm*, 463 U.S. at 292, 103 S.Ct. at 3011 77 L.Ed.2d at 650.

*State v. Castaneira*, 502 N.W.2d 112, 114–115 (S.D.1993) (quoting, *State v. Gehrke*, 491 N.W.2d 421, 423 (S.D.1992)).

The test to determine whether a sentence is so constitutionally offensive as to shock the conscience is two-fold. *State v. Shilvock–Havird*, 472 N.W.2d 773 (S.D. 1991).

> First, is the punishment so excessive or so cruel "as to meet the disapproval and condemnation of the conscience and reason of men generally." And second, whether the punishment is so excessive or so cruel as to shock the collective conscience of this court.

*Id.*, 472 N.W.2d at 779.

> When determining a fitting sentence, the sentencing court should " 'acquire a thorough acquaintance with the character and history of the man before it.' " *State v. Carsten*, 264 N.W.2d 707, 709 (S.D.1978) (quoting *United States v. Hendrix*, 505 F.2d 1233, 1235–36 (2d Cir.1974)); *State v. Murphy*, 506 N.W.2d 130 (S.D.1993). This study should examine a defendant's "general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family,

occupation, and previous criminal record." *State v. Degen,* 396 N.W.2d 759, 760 (S.D.1986).

*State v. Pack,* 516 N.W.2d 665, 667–668 (S.D.1994).

Chase in Winter points to several factors which, he contends, lead to the conclusion that the two-hundred-year sentence shocks the conscience. First, he is a young man (21) from a dysfunctional family who is mentally ill but susceptible to treatment. Second, he is a first-time felon. And, third, a two-hundred-year sentence forecloses his opportunity for rehabilitation.

This Court is no stranger to reviewing lengthy sentences given to young offenders, and, depending on the crime and the history of criminal some sentences have been upheld and some reversed. *See, State v. Lohnes,* 344 N.W.2d 686 (S.D.1984); *State v. Holloway,* 482 N.W.2d 306 (S.D.1992); *Bult v. Leapley,* 507 N.W.2d 325 (S.D.1993); *State v. Ferguson, supra; State v. Bult,* 529 N.W.2d 197 (S.D.1995).

In this case, while the sentence is strict, it does not shock the conscience for several reasons. While Chase in Winter is a young first time felon, he has an extensive juvenile record which includes committing acts that mirror the crimes that he is before this Court on. Years of therapy and counseling have met with little success because of his lack of interest in them. The crimes he committed here were particularly vile and abhorrent and had a devastating effect upon the victim and his family. Chase in Winter shows little remorse. In addition, Chase in Winter pled guilty pursuant to a plea agreement which allowed him to avoid a sentence of life without parole. According to the state, he will be parole eligible in July 2018 when he is forty-six years old and has had the opportunity for therapy and rehabilitation. Thus the trial court considered Chase in Winter in light of the required sentencing factors, including rehabilitation. *State v. Bult, supra.* The sentence neither shocks the conscience nor is disproportionate to the crime.

The judgment is affirmed.

MILLER, C.J., SABERS, AMUNDSON and KONENKAMP, JJ., and WUEST, Retired J., participating.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted did not participate.

