2004 SD 75

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**James GOODWIN, Defendant and Appellant.**

**No. 22574.**

Supreme Court of South Dakota.

Considered on Briefs Aug. 25, 2003.

Reassigned Dec. 1, 2003.

Decided June 2, 2004.

Lawrence E. Long, Attorney General, Ann C. Meyer, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Terry Pechota of Viken, Viken, Pechota, Leach & Dewell, Rapid City, South Dakota, Attorneys for defendant and appellant.

MEIERHENRY, Justice (on reassignment).

[¶ 1.] James Goodwin was charged with aggravated assault under SDCL 22–18–1.1(4).[1] At his arraignment, he entered a plea of not guilty. Subsequently, Goodwin changed his plea to guilty in accordance with a plea agreement with the State. After sentencing, Goodwin filed a motion to withdraw his plea claiming that his plea was not voluntary. The trial court denied Goodwin's motion. Goodwin appeals. We reverse.

### FACTS

[¶ 2.] Although some of the details are in dispute, the events leading up to the charged offense started when Patrick James (James), Jessica Yeoman, Joshua Feickert and others were at a party near a shopping mall in Rapid City, South Dakota. A verbal altercation ensued between Feickert and James, after which Feickert left the party. Yeoman gave Feickert a ride to the shopping mall to make a phone call. Yeoman returned to the party and told James where she had left Feickert. Yeoman and James returned to the mall. Goodwin who had just arrived at the party followed them. At the mall, James approached Feickert hitting him twice in the face with his fist. The two continued to fight until Feickert was on the ground. The testimony indicated that James continued to hit and kick Feickert as he lay on the ground. Defendant Goodwin who had not been in the fight up to this point

---

1. SDCL 22–18–1.1 states in part:

   Any person who:

   . . .

   (4) Assaults another with intent to commit bodily injury which results in serious bodily injury

   . . .

   is guilty of aggravated assault.

approached the fallen Feickert and kicked him in the face. Feickert was taken to the hospital where it was determined his jaw was broken in two places. Goodwin and James were both charged for the incident. The charges against James were eventually dismissed.

[¶ 3.] At his arraignment, 19–year–old Goodwin was advised of his rights and responded affirmatively when asked if he understood his rights. Over the following weeks, Goodwin's counsel negotiated a plea agreement with the State. At the Change of Plea Hearing, eighty-nine days after the arraignment, Goodwin pleaded guilty to the charge of aggravated assault. The judge accepted the plea and subsequently sentenced Goodwin to five years in the South Dakota Penitentiary and ordered him to pay full restitution of approximately $55,000.

### ISSUE

Whether the trial court abused its discretion in denying Goodwin's motion to withdraw his guilty plea to correct a manifest injustice.

### STANDARD OF REVIEW

[¶ 4.] The decision to allow a defendant to withdraw a guilty plea is a matter solely within the discretion of the trial court and is reviewed under an abuse of discretion standard. *State v. Wahle,* 521 N.W.2d 134, 136–37 (S.D.1994). We have said that the trial court's discretion to allow withdrawal of a guilty plea prior to "sentencing should be exercised liberally in favor of withdrawal." *Id.* at 137. However, a stricter standard should be applied when a defendant requests to withdraw a guilty plea after a sentence has been imposed. Withdrawal of a plea after sentencing may be granted "to correct manifest injustice." SDCL 23A–27–11. The statute provides:

A motion to withdraw a plea of guilty ... may be made only before sentence is imposed or imposition of sentence is suspended; but to *correct manifest injustice* a court after sentence may set aside a judgment of conviction and permit the defendant to withdraw his plea.

*Id.* (emphasis added). The stricter standard for withdrawing a plea after sentencing is " 'to prevent a defendant from testing the weight of potential punishment, and then withdrawing the plea if he finds the sentence unexpectedly severe.' " *State v. Lohnes,* 344 N.W.2d 686, 688 (S.D.1984) (quoting *United States v. McKoy,* 645 F.2d 1037, 1040 n. 3 (C.A.D.C. 1981)). However, if a defendant enters a plea "without full knowledge of the consequences and involuntarily" the trial court's discretion should favor withdrawal of the guilty plea. *Wahle,* 521 N.W.2d at 137. Additionally a direct appeal is afforded more intense scrutiny than if the challenge is by a collateral habeas corpus action. *State v. Moeller,* 511 N.W.2d 803, 809 (S.D.1994). As we said in *Moeller:*

Upon a direct appeal from a conviction the defendant must be given all presumptions and protections possible under our constitution. However, when the proceeding before the court is in the nature of a collateral attack, as in a habeas corpus action or a challenge to the validity of predicate convictions, it becomes subject to less intense scrutiny upon review.

*Id.* (emphasis added in part). Since Goodwin challenges the voluntariness of his guilty plea by direct appeal, we must give him "all the presumptions and protections possible under our constitution." *Id.*

### DECISION

[¶ 5.] Goodwin claims the trial court should have allowed him to withdraw his guilty plea (1) because his plea was not

voluntary and (2) because he entered his plea without knowing the consequences.

[¶ 6.] In determining voluntariness of a guilty plea, we have repeatedly stated "that a plea of guilty cannot stand unless the record in some manner indicates a free and intelligent waiver of the three constitutional rights mentioned in *Boykin*—self-incrimination, confrontation and jury trial—and an understanding of the nature and consequences of the plea." *Nachtigall v. Erickson*, 85 S.D. 122, 128, 178 N.W.2d 198, 201 (1970); *State v. Holmes*, 270 N.W.2d 51, 53 (S.D.1978); *Lodermeier v. State*, 273 N.W.2d 163, 165 (S.D.1978). Specifically, in *Boykin v. Alabama*, the United States Supreme Court held that a defendant must know and understand his "privilege against compulsory self-incrimination"; his "right to trial by jury"; and his "right to confront [his] accusers." 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d·274 (1969). Further, the defendant must know and understand that entering a plea of guilty constitutes a waiver of these rights. *Id.* at 243–44, 89 S.Ct. 1709. As the United States Supreme Court stated in *Parke v. Raley*, "It is beyond dispute that a guilty plea must be both knowing and voluntary." 506 U.S. 20, 28, 113 S.Ct. 517, 523, 121 L.Ed.2d 391, 404.

[¶ 7.] SDCL 23A–7–4 (Rule 11(c)) establishes a procedure for the judge to follow to ensure that a guilty plea is knowing and voluntary. Rule 11(c) is fairly straightforward on what the trial court should do. The statute clearly states, "*Before accepting a plea of guilty ... a court must address the defendant personally in open court ... and inform him of, and determine that he understands.*" SDCL 23A–7–4 (emphasis added). The statute provides:

> Before accepting a plea of guilty or nolo contendere a court must address the defendant personally in open court, subject to the exception stated in § 23A–7–5, and inform him of, and determine that he understands, the following:
>
> (1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law;
>
> (2) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceedings against him and, if necessary, one will be appointed to represent him;
>
> (3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself;
>
> (4) That if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and
>
> (5) That if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury.

*Id.*

[¶ 8.] When Goodwin was arraigned on October 25, 2001, the judge thoroughly explained the charges, penalties and rights. Eighty-nine days after the arraignment on January 22, 2002, Goodwin changed his plea to guilty. When Goodwin appeared before the judge to change his plea to guilty, the trial court abbreviated

the proceeding significantly. The trial court's entire colloquy at the plea hearing transpired as follows:

THE COURT: This is the case of *State v. James Goodwin.* This is the time set for a plea. What is the plea going to be to?

DEFENSE COUNSEL: To one count in the Information of aggravated assault.

THE COURT: Is that your understanding?

THE DEFENDANT: Yes, sir.

THE COURT: Is there a plea agreement, other than what you stated?

STATE'S ATTORNEY: The Defendant will plead guilty to one count of aggravated assault. The Defendant will be responsible for all the costs of the prosecution and his share of restitution at the time of sentencing. State will accept the recommendations set forth in the presentence, and otherwise will remain silent. As far as the amount of incarceration, penitentiary time would be our recommendation, but we would leave the actual amount of time up to the Judge. The State will recommend penitentiary, but no specific amount. State will oppose a suspended imposition.

THE COURT: Is that your understanding of the agreement, Mr. Goodwin?

THE DEFENDANT: Yes, sir.

THE COURT: I will ask you then, to the charge of aggravated assault, what is your plea, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Has anyone threatened, coerced or promised you anything, other than what you have heard here in open Court, to get you to enter this plea?

THE DEFENDANT: No, sir.

THE COURT: It says here that you assaulted a Joshua Feickert; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: How did you do that?

THE DEFENDANT: Joshua Feickert and Pat James were on the ground, and I kicked Joshua Feickert in the head.

THE COURT: Did it cause injury to him?

THE DEFENDANT: I don't think so.

THE COURT: Does anybody know what the injuries were?

DEFENSE COUNSEL: He sustained injuries, and had to seek medical attention. He had a—

STATE'S ATTORNEY: He had a broken jaw, your Honor.

THE COURT: He sustained a broken jaw. I will accept the plea as being given freely and voluntarily, and find that there is a factual basis for the plea. We will set the matter for sentencing on March 4th at 9:00 o'clock. I want a presentence done also.

The trial judge asked Goodwin (1) what his plea was, (2) whether he understood that he was entering a plea to the charge of aggravated assault, (3) whether there was a plea agreement, (4) whether he understood the terms of the plea agreement, and (5) whether anyone had threatened, coerced or promised him anything to get him to enter the plea.

[¶ 9.] What is significant here is what the trial judge did not ask Goodwin. He does not ask him whether he understood that he was giving up his right to a trial, his right to confront the witnesses against him and his right against self incrimination. The judge also does not reiterate the possible penalties that could be imposed. The questions and answers at the time the defendant entered his guilty plea failed to elicit responses from which the judge could determine whether Goodwin "intelligently" or "knowingly" waived his rights. In fact, the judge did not specifically conclude the rights were "intel-

ligently" and "knowingly" waived. The judge asked Goodwin, "Has anyone threatened, coerced or promised you anything, other than what you have heard here in open Court, to get you to enter this plea?" Goodwin answers, "No, sir." Although the judge made no reference to the waiver of rights, the judge nevertheless concluded that he would "accept the plea as being given freely and voluntarily." A defendant's answer that he has not been forced or coerced into pleading guilty does not necessarily mean he understands the full ramification of the rights that he gives up by pleading guilty or the possible penalties he faces. That is why it is important, as we have previously stated, for the trial judge before accepting a guilty plea to "actively participate by 'canvassing the matter with the accused.'" *Nachtigall*, 85 S.D. at 128, 178 N.W.2d at 201. "The trial court must be able to determine from its own record that the accused has made a free and intelligent waiver of his constitutional rights before a guilty plea is accepted." *State v. Sutton*, 317 N.W.2d 414, 416 (S.D.1982).

[¶ 10.] The importance of canvassing the defendant when he enters a guilty plea is vital. For it is at this juncture that the defendant waives his rights and needs to understand the consequences of his plea. Shortcutting the procedure when accepting a guilty plea leaves a question about the defendant's mental state and understanding. That is why courts have consistently emphasized the importance of the trial court's dialogue with the defendant in order for the court to satisfy itself that the defendant understands what is at stake and the rights he is relinquishing.

[¶ 11.] The mere fact that the same judge explained Goodwin's rights in detail at the arraignment is not sufficient alone in determining that Goodwin made a free and intelligent waiver at his plea 89 days later. We must look to "the totality of the circumstances when ascertaining whether a plea was made knowingly and voluntarily." *State v. Lashwood*, 384 N.W.2d 319, 321 (S.D.1986). In examining the "totality of the circumstances" we have taken into consideration the following factors: the defendant's age; his prior criminal record; whether he is represented by counsel; the existence of a plea agreement; *Weiker v. Solem*, 515 N.W.2d 827, 832 (S.D.1994); and the time between advisement of rights and entering a plea of guilty. *Clark v. State*, 294 N.W.2d 916, 919 (S.D.1980). We will, therefore, examine each of these factors as they apply to Goodwin.

[¶ 12.] The first factor in the analysis is the young age of defendant. Age as a factor relates to Goodwin's maturity and experience and bears upon the determination of whether his plea was voluntary.[2] Goodwin was 19 years of age facing his first felony.[3] He had just graduated from high school and still lived at home with his mother. Further, none of the court's questions at the plea hearing explored Goodwin's maturity and experience.

[¶ 13.] The second factor which enters into the analysis of whether a plea is voluntary is Goodwin's lack of a prior criminal record. Goodwin had no prior experience with the legal system from which to draw knowledge or understanding. This factor, as with his age, mitigates against him hav-

---

2. Age is also a factor in determining if a confession was voluntarily given. It remains a factor even if the confessor is over the age of majority. *See State v. Darby*, 1996 SD 127, ¶ 29, 556 N.W.2d 311, 319.

3. Goodwin was only 18 years of age at the time of the alleged assault.

ing made a free and intelligent waiver of his rights.

[¶ 14.] The third factor in the totality of the circumstances analysis is legal representation. It is assumed that legal counsel has explained the consequences of a guilty plea to a defendant. *Cf. Henderson v. Morgan,* 426 U.S. 637, 647, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976) (discussing that it is usually assumed counsel has explained the nature of the offense and what will have to be admitted). Goodwin claims in his affidavit in support of his motion to withdraw his guilty plea that his attorney had not explained the consequences of the guilty plea. Goodwin states: "Prior to entering my guilty plea on or about January 22, 2002, I was not advised of any rights by my attorney ... to confront and cross examine witnesses, and the right not to be compelled to incriminate myself. I also was not advised of those rights by the Court and did not waive those rights ... at the plea hearing held in this case." Here Goodwin appears with counsel at the hearing. During the abbreviated plea hearing, very little is offered or said by Goodwin's counsel. The trial court does not ask Goodwin's counsel nor does counsel offer any information about whether he had discussed the consequences or voluntariness of the plea with Goodwin. At the hearing, Goodwin's attorney only speaks twice: once to indicate the charge to which Goodwin will plead and second to answer a question about the victim's injury which he is unable to finish answering because the State's attorney interrupts him. Also, this Court recently said that "[t]he duty to explain these rights on the record belongs to the trial court and not to the defendant's attorney." *State v. Nikolaev,* 2000 SD 142, ¶ 7, 619 N.W.2d 244, 245 (citing *Croan v. State,* 295 N.W.2d 728, 729 (S.D.1980)).

[¶ 15.] The fourth factor that may be considered is the existence of a plea agreement. We considered a plea bargain in *Clark* in determining if the defendant understood the consequences of his guilty plea. 294 N.W.2d at 920. Specifically, Clark knew "that the prosecutor would recommend a sentence of 10 years." *Id.* Along with the plea agreement, other factors weighed against Clark's claim. He was twenty-eight years old, had previously been convicted of a felony, was adequately represented by counsel and "was not functioning blindly within the criminal court system." *Id.*

[¶ 16.] The plea agreement with Goodwin as recited by the State's attorney at the plea hearing was as follows:

> The Defendant will plead guilty to one count of aggravated assault. The Defendant will be responsible for all the costs of the prosecution and his share of restitution at the time of sentencing. State will accept the recommendations set forth in the presentence, and otherwise will remain silent. As far as the amount of incarceration, penitentiary time would be our recommendation, but we would leave the actual amount of time up to the Judge. The State will recommend penitentiary, but no specific amount. State will oppose a suspended imposition.

The court then asked, "Is that your understanding of the agreement, Mr. Goodwin?" To which Goodwin answered, "Yes, sir." This short recitation offers little in the analysis of whether Goodwin's plea was voluntary, and unlike *Clark* the specific term of the sentence was not stated. The agreement does, however, indicate that Goodwin would be responsible for "his share of restitution." Goodwin claims that he expected to be required to pay part of the restitution and James, who was also charged, would pay the rest. The State dismissed the charges against James and

the trial court ordered Goodwin to pay the full amount. Goodwin claims as to restitution the plea agreement was not followed and that the inequity of requiring him to pay more than his share adds to his claim of manifest injustice.

[¶ 17.] Finally, in the totality of the circumstances analysis the time lapse between the explanation of rights at the arraignment and the guilty plea is considered. This is a relevant factor in this case because Goodwin was told his rights, the nature of the charge, and the maximum sentence at his arraignment but was not re-advised at his guilty plea nor specifically canvassed concerning the waiver of those rights or consequences of the plea. Although we have previously determined that a court may not be required to repeat the rights and consequences at the plea hearing if the same judge provided an explanation at the arraignment, much depends on the circumstances of the individual case. *Singletary v. State*, 88 S.D. 655, 227 N.W.2d 424 (1975); *Clark*, 294 N.W.2d 916. In denying Goodwin's motion to withdraw his guilty plea, the trial judge relied on the fact that he had advised Goodwin of his rights at the arraignment. However, the time frame here is significant. The closer the arraignment explanation is to the guilty plea the more likely the defendant remembers the recitation of rights. Our prior cases have allowed, in habeas challenges, time frames of five hours in *Singletary*, 88 S.D. 655, 227 N.W.2d 424; 26 days in *Clark*, 294 N.W.2d 916 (discussed *supra*); and 30 days in *Stacey v. State*, 349 N.W.2d 439 (S.D.1984). In *Singletary*, the defendant changed his plea after jury selection had commenced and the State's first two witnesses had been cross-examined. 88 S.D. at 660, 227 N.W.2d 424. This Court reasoned that Singletary "was not only explained his rights but participated in the very proceedings those rights guaranteed," leaving no doubt that he knew his rights and

voluntarily waived them. *Id.* In *Stacey*, the circuit court extensively questioned the defendant on the voluntariness of the plea. 349 N.W.2d at 442. In another case however, the plea was reversed because there was a 57 day lapse and a different judge presided at the plea hearing. *In re Garritsen*, 376 N.W.2d 575, 577–78 (S.D.1985). For Goodwin, 89 days had elapsed between the arraignment and guilty plea—far longer than 5 hours, 26 days, or 30 days. Additionally, his challenge is on direct appeal which requires more intense scrutiny than a habeas challenge. The trial court did not repeat nor make any reference to the explanation of the charges, penalty or rights which he had given to Goodwin 89 days earlier at the arraignment. Whether the defendant remembered the recitation of rights or understood that he waived those rights by entering a guilty plea is not apparent from the record. Nor does the record reveal his intellectual faculty to recall and understand.

[¶ 18.] A nineteen-year-old charged with a serious felony having no prior experience with criminal court should be afforded his constitutional and statutory rights and is entitled to have the trial judge, at least, canvass him meaningfully to determine if he understands the rights that he is waiving and the full consequences of entering a guilty plea. The record does not show that Goodwin knowingly and voluntarily waived his rights based upon the totality of the circumstances. The trial court abused its discretion by not allowing Goodwin to withdraw his guilty plea to correct a manifest injustice. We reverse and remand to allow the defendant to withdraw his guilty plea and proceed to trial.

[¶ 19.] SABERS, Justice, concurs, and KONENKAMP, Justice, concurs with writing.

[¶ 20.] GILBERTSON, Chief Justice and ZINTER, Justice, dissent.

KONENKAMP, Justice (concurring).

[¶ 21.] Goodwin should be permitted to withdraw his plea of guilty to aggravated assault because the record does not *affirmatively show* at the time he pleaded guilty that he did so understandingly and voluntarily. *Roseland v. State*, 334 N.W.2d 43, 45 (S.D.1983); *State v. Holmes*, 270 N.W.2d 51, 53 (S.D.1978). "Before accepting" guilty pleas, judges are required to personally address defendants in open court, informing them that if they plead guilty they waive their right to a trial, their right to confront and cross-examine witnesses against them, and their right not to be compelled to incriminate themselves. SDCL 23A–7–4 (Rule 11(c)). No prudent reading of our statutes can lead to the conclusion that this requirement can be fulfilled *anytime* before a guilty plea, no matter how long before.

[¶ 22.] It is true that this Court has upheld guilty pleas when judges have failed to readvise defendants of their rights immediately before pleading guilty if the record shows that they had knowledge of their rights and the consequences when entering their guilty pleas. *Clark*, 294 N.W.2d at 919. We have found no abuse of discretion where the time span between advice and plea was five hours, twenty-six days, and thirty days. *See Garritsen*, 376 N.W.2d at 577–78 (citing cases). But let us be clear and emphatic on this point: those cases did not establish a model performance standard. They measured the limits of judicial discretion in determining whether readvisement and explicit waiver were required. Those cases can be summed up by saying that we will not insist on a ritualistic recitation of rights each time a defendant pleads guilty, regardless of how fresh those rights remain in the mind of the defendant. We look to the totality of circumstances. Nonetheless, we have never condoned a plea of guilty where the lapse between advice and plea spanned some three months.

[¶ 23.] Here the judge never asked Goodwin whether he recalled the rights recited to him eighty-nine days earlier and never asked him if he understood that he was then waiving those rights by pleading guilty. The purpose for the procedure in SDCL 23A–7–4 (Rule 11(c)) is to ensure that defendants are fully aware of the consequences of a guilty plea before they enter that plea. Thus, the record must affirmatively show that the plea was voluntary, that the defendant understood the consequences of pleading guilty, and that the defendant explicitly waived the constitutional right against compulsory self incrimination, the right to trial by jury, and the right to confront one's accusers. *See Boykin*, 395 U.S. at 243–44, 89 S.Ct. at 1712, 23 L.Ed.2d at 279–80; *Nachtigall*, 178 N.W.2d at 201. The record in this case fails to satisfy the foregoing requirements. Goodwin's plea was therefore defective. South Dakota law provides for withdrawal of a plea if that withdrawal is necessary "to correct a manifest injustice." SDCL 23A–27–11 (Rule 32(d)). *Cf. State v. Gunwall*, 522 N.W.2d 183, 185 (N.D. 1994) (interpreting identical statute).

ZINTER, Justice (dissenting).

[¶ 24.] In determining whether a request to withdraw an alleged involuntary plea is meritorious, the "court should look to the reasons why a defendant seeks to withdraw the plea." *State v. Thielsen*, 2004 SD 17, ¶ 17, 675 N.W.2d 429, 433 (citing *State v. Bailey*, 1996 SD 45, ¶ 12, 546 N.W.2d 387, 391). Goodwin did not testify or even allege that his plea was involuntary because he was *never* informed of his rights, that he misunderstood his rights, or that he misunderstood the consequences of his plea. This is understandable because no one disputes that Goodwin

was fully and adequately advised of each of those matters by Judge Trimble at the arraignment. Moreover, there is no dispute that Goodwin *affirmatively* indicated *on the record* that he understood his rights at that time. Finally, there is no dispute that Judge Trimble expressly found that Goodwin's subsequent plea, entered 89 days later, was "freely and voluntarily" given. Given those facts and the trial court's finding, our inquiry is narrow, and we should be constrained to review the court's finding under the abuse of discretion standard. *Id.* ¶ 16. That requires that we determine whether the trial court exercised its discretion "to an end or purpose not justified by, and clearly against, reason and evidence." *Id.* (quoting *State v. Engelmann*, 541 N.W.2d 96, 100 (S.D. 1995)). Considering the *evidence* that *is in this record*, no such abuse of discretion occurred.

[¶ 25.] Remarkably, however, this Court overturns the trial court's finding, not upon *any evidence* that Goodwin *misunderstood* the rights *he was given*, but simply upon conjecture that the plea must have been involuntary because Goodwin was 19, had no criminal record, and 89 days expired between the time he was advised of his rights and the time he changed his plea (the Court gives no weight to the apparently inconsequential facts that Goodwin was represented by counsel throughout these proceedings and that he changed his plea pursuant to a written plea agreement indicating an eight-year penitentiary sentence would be requested). Consequently, we now have a new rule that even when there is no allegation that a plea is involuntary as a matter of fact, a guilty plea cannot be knowingly, intelligently, and voluntarily given as a

matter of law if there is a failure to *re-advise* certain defendants of their rights 89 or more days following their arraignment.[4] I dissent because this new rule is unsupported by precedent. I also dissent because, when reviewed under the required "objective standards," this record does not reflect that Goodwin's change of plea was involuntary.

**Under the totality of the circumstances, a change of plea, entered pursuant to a written plea agreement, may be entered with the assistance of counsel 89 days after the initial advisement of rights.**

[¶ 26.] Our cases have established four rules that we apply when considering this issue. First, when a defendant enters a guilty plea without full knowledge of the consequences of doing so, the court will apply an objective standard to determine if the defendant's mistaken impression was reasonably justified, thereby rendering the guilty plea involuntary. *Id.* ¶ 22 (citing *Engelmann*, 541 N.W.2d at 101). Second, it is not necessary to re-advise defendants of their constitutional rights between the time of plea and the time of sentencing if the plea is before the same judge and the record shows that the defendant had knowledge of those rights and the consequences of the plea when entered. *In re Garritsen*, 376 N.W.2d 575, 577 (S.D.1985) (citing *Clark v. State*, 294 N.W.2d 916, 919 (S.D.1980)). Third, if there is a question of voluntariness, "[t]he fundamental test is whether the plea of guilty was an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *Hofer v. Class*, 1998 SD 58, ¶ 26, 578 N.W.2d 583, 588 (citations omitted). Finally, in determining whether a guilty plea was knowingly and voluntarily

---

4. The Court acknowledges that 30 days is acceptable. Apparently, however, even under an objective standard utilizing the totality of the circumstances, 89 days can never pass muster.

entered, we look at the totality of the circumstances. *State v. Lohnes,* 344 N.W.2d 686, 688 (S.D.1984).

[¶ 27.] In examining the totality of the circumstances, we should begin with the fact that Goodwin was first advised of his rights at his initial appearance on the charge of aggravated assault. He appeared before a magistrate, was advised of his rights, and signed a written acknowledgement of his understanding of those rights. In that written acknowledgement, Goodwin affirmatively indicated that he understood the following rights:

1. right to counsel

2. right to speedy public trial by an impartial jury

3. presumption of innocence until proven guilty beyond a reasonable doubt

4. right of compulsory process

5. right to confront and cross-examine witnesses

6. right against self-incrimination

7. a right to preliminary hearing (specifically advising that this was an additional safeguard "to make sure you are not being compelled to defend yourself against a false or unfounded charge").

Goodwin answered "yes" to the question "do you understand these rights?" Moreover, he signed this form and retained counsel.

[¶ 28.] Goodwin was again advised of his rights by Judge Trimble at his arraignment. On October 25, 2001, Goodwin appeared before Judge Trimble with counsel.

Judge Trimble informed Goodwin of his constitutional right to confront and cross-examine the witnesses against him, the right to trial by jury, and the right against self-incrimination as mandated by *Nachtigall v. Erickson,* 85 S.D. 122, 178 N.W.2d 198 (1970) and *Boykin v. Alabama,* 395 U.S. 238, 243–44, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279–80 (1969).[5] Judge Trimble also advised Goodwin of the additional statutory rights outlined in SDCL 23A–7–4 (South Dakota's equivalent of Fed. R. Crim. P. 11(c)).[6] Goodwin stated that he understood his constitutional and statutory rights, he understood the nature of the charges and the maximum penalty, and he entered a plea of not guilty. His attorney also informed the court that plea negotiations were taking place.

[¶ 29.] A plea agreement was subsequently reached. It was an "open" plea agreement. The agreement was "open" because the "amount of *incarceration in the penitentiary*" and "[Goodwin's] share of restitution" were left to be determined "as ordered by the Court." (Emphasis added.)

[¶ 30.] On January 22, 2002, Goodwin appeared with counsel before Judge Trimble to change his plea in accordance with the negotiated plea agreement. Although he was not re-advised of his rights, Judge Trimble inquired whether the plea was voluntary and if a factual basis existed for it. Judge Trimble first inquired if the plea was voluntary, stating, "Has anyone threatened, coerced or promised you any-

---

5. *Boykin* holds that a guilty plea is only valid if a defendant is shown to have "freely and intelligently waived his constitutional right to confront and cross-examine witnesses against him, waived his constitutional right to trial by jury, and waived his constitutional privilege against self-incrimination." *Garritsen,* 376 N.W.2d at 577 (quoting *Boykin,* 395 U.S. at 243–44, 89 S.Ct. at 1712–13, 23 L.Ed.2d at 279–80). These rights were concededly given.

6. The other advisement included: the right to be represented by an attorney; the right to be present at all stages of the proceedings; the right to enter a plea of guilty; the fact that if a guilty plea was entered, all of his rights would be waived; and the nature of the charge of felony aggravated assault, including its maximum penalty.

thing, other than what you have heard here in open Court, to get you to enter this plea?" Goodwin responded, "No, sir." With respect to the factual basis, Goodwin admitted kicking Feickert in the head while he was on the ground. However, when the court asked if the kick caused injury to Feickert, Goodwin replied "I don't think so." Consequently, the court inquired further, asking, "Does anybody know what the injuries were?" Goodwin's attorney and the State's Attorney responded, "He had a ... broken jaw, your Honor." Judge Trimble then determined that the plea was voluntary and that a factual basis existed for the plea. The court ultimately accepted the plea and ordered a pre-sentence investigation.

[¶ 31.] On April 8, 2002, Goodwin was sentenced to five years in the penitentiary and ordered to pay restitution in the full amount of the victim's medical expenses ($55,149.17). At that time, Goodwin raised no objections to the sentence or the restitution, and he expressed no misunderstanding of his rights. However, approximately 50 days after being sentenced, he filed a motion to withdraw his guilty plea. Even then, Goodwin did not allege that factually, his plea was involuntary. Instead, he alleged that his plea was presumptively involuntary because he had not been *re-advised* of his rights during the change of plea hearing.

[¶ 32.] In considering this allegation, it is important to reiterate that Judge Trimble's advisement at the arraignment specifically included the rights that this Court now concludes are absent from the record, i.e.: Goodwin's right to a trial, right to confront witnesses against him, right against self incrimination, the penalties that could be imposed, and the consequences of a plea. In fact, the "record evidence" clearly reflects that those rights were given:

THE COURT: I'm going to go over your rights with you here, and if you have any difficulty hearing me or understanding me or have any questions, feel free to stop me at any time. Mr. Goodwin, *you have a right to be represented by an attorney at all stages of the proceedings against you.* And you are here represented by Mr. Speck here today. Any money spent for court-appointed counsel fees is a bill or a lien against any property that you own.

*You are presumed innocent* until the State has established guilt beyond a reasonable doubt. *You are entitled to a jury trial* composed of a jury selected from here in Pennington County, the county in which you are charged. A jury trial is a trial to 12 jurors, whose decision must be unanimous, that is, agreed upon by all 12. The jury determines the facts, they determine guilt or innocence. You may, if you wish, select a court trial. A court trial is a trial to the judge alone. The judge determines the facts and determines guilt or innocence. You are entirely free to choose whether you want a court trial or a jury trial.

*You are entitled to be present at all stages of the proceedings* against you, and either in person or through your attorney to *confront the witnesses presented against you* by the State. *It is your right to cross-examine these witnesses* or ask them any questions concerning testimony that they give against you.

*You have a right to subpoena witnesses* to come into Court to testify on your behalf. This means that if there is someone to help you present your side of the situation, they can be ordered to appear and tell what they know. They cannot be told what to say, but they can

be told to appear and tell what they know about the particular situation.

In addition, you have a *right against self-incrimination.* This means that you cannot be forced to testify or answer any questions about any fact or matter that is at issue in the criminal case pending against you. I want to caution you that anything that you say can and will be used against you in subsequent hearings or proceedings. *You have an absolute right to remain silent.* Neither the State nor the Court can ever comment on the fact that you have not testified or answered questions. It is not an inference of guilty that you have refused to do so.

*Mr. Goodwin, do you understand your rights?*

THE DEFENDANT: *Yes, sir.*

THE COURT: In addition to the rights that I have advised you of, you have several pleas available to you. First of all, *you may enter a plea of not guilty. This is a denial of the charge or charges against you. It protects each and every one of your constitutional and statutory rights that I have advised you of and puts the State to its proof.*

*You may, if you wish, enter a plea of guilty. A plea of guilty on your behalf is an unqualified admission that you did in fact commit the offense or offenses with which you · have been charged. Most importantly, it is a waiver or a giving up of each and every one of the rights that I have discussed with you, but specifically, your right to a trial, your right to confront the witnesses against you, and your right against self-incrimination. If you enter a plea of guilty, you will come before the Court for sentencing.*

In addition, there are several pleas allowed by statute. A plea of nolo contendere is a statement by you that you do not wish to contest the charge against you. It allows the State to come forward on the Indictment filed, and substantiate it with the evidence that they have. Even though there is not a determination of guilt, you still face a statutory maximum fine or sentence.

Pleas of not guilty by reason of mental illness and guilty but mentally ill are significant in that if it takes a specific mental intent to commit the offense and you are unable to form that intent at the time, you may have a defense or a partial defense to the charge or charges filed against you. There are also provisions for psychiatric and psychological care and counseling in addition to a statutory maximum fine or sentence.

*It may well be that there are lesser included offenses involved in the main charges filed against you. The significance of a lesser included offense is that it carries a smaller maximum fine or sentence than the charge with which you are faced. You would want to discuss with your attorney the significance of any lesser included offense.*

In addition, a question of restitution may develop if there is a finding of guilt. You must resolve any issues surrounding the amount of restitution prior to sentencing, or I would deem that you have waived your right.

*Mr. Goodwin, you are charged with aggravated assault. The charge is that on the 26th day of May this year, in this county, Pennington, that you assaulted a Joshua Feickert, with the intent to commit bodily injury, which resulted in serious bodily injury. This carries a penalty of up to 15 years, and/or a $15,000 fine. Do you understand what you are charged with and what the maximum penalty is?*

THE DEFENDANT: *Yes.*

THE COURT: What's the plea on this?

THE DEFENDANT: Not guilty.

(Emphasis added.) Notwithstanding this record evidence and Goodwin's affirmative acknowledgment that he understood his statutory and constitutional rights, he now contends that the failure to *re-advise* him of those rights at the change of plea hearing violated SDCL 23A–7–4 and rendered his plea involuntary.

[¶ 33.] Judge Trimble's initial advisement was, however, clearly adequate to satisfy all of the presumptions and protections required by our Constitutions. Although *Boykin* requires a knowing and intelligent waiver, *Boykin* does not require the 89–day re-advisement rule that the Court adopts today. It must be remembered that *Boykin* involved a case in which there was *no record* that the defendant *was ever* advised of his constitutional rights. Consequently, *Boykin* merely invalidated pleas based on silent records. "Presuming waiver from a silent record is impermissible." *Id.,* 395 U.S. at 242, 89 S.Ct. at 1712.

[¶ 34.] Here, however, the record reveals that Goodwin was advised of, and affirmatively indicated his knowledge and understanding of his rights on two occasions. Therefore, even giving Goodwin all the presumptions and protections possible under our Constitution, this record affirmatively reflects that the required constitutional protections were afforded. Indeed, a recent Supreme Court decision, in the closely related area of the waiver of counsel rights at plea hearings, confirms that the law ordinarily considers such waivers knowing, intelligent, and sufficient "if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances . . . [and that] the State may [ ] prevail if it shows that the information provided to the defendant satisfied the constitutional minimum." *Iowa v. Tovar,* — U.S. —,

——, 124 S.Ct. 1379, 1389, 158 L.Ed.2d 209 (2004) (quoting *United States v. Ruiz,* 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002); *Patterson v. Illinois,* 487 U.S. 285, 294, 108 S.Ct. 2389, 101 L.Ed.2d 261). Clearly, the two advisements of rights provided in this case satisfied the constitutional minimum required by *Boykin.*

[¶ 35.] Moreover, Goodwin's advisement of rights was objectively sufficient because SDCL 23A–7–4 only requires that an advisement take place "before" a defendant's plea is accepted. There is certainly no bright line rule or requirement that an *advisement* must always take place *a second time* when a change of plea is requested by a defendant. On the contrary, a judge who, as in this case, fully canvasses a defendant at the arraignment *has* advised a defendant *before* accepting the plea within the meaning of this statute. The real question in such cases is whether, under the totality of the circumstances, the plea is either unknowing or involuntary when judged by objective standards. *Thielsen,* 2004 SD 17, ¶ 22, 675 N.W.2d at 434.

[¶ 36.] There is no bright line re-advisement rule because SDCL 23A–7–4 only requires "substantial compliance." *State v. Richards,* 2002 SD 18, ¶ 8, 640 N.W.2d 480, 482 (citing *State v. Nikolaev,* 2000 SD 142, ¶ 10, 619 N.W.2d 244, 246). Therefore, this Court has specifically held that "[i]t is not necessary to readvise a defendant of his rights immediately prior to pleading guilty if the record shows the defendant had knowledge of his rights and the consequences of his plea when entered[.]" *Garritsen,* 376 N.W.2d at 577. For the same reason, this Court has *repeatedly* upheld similar guilty pleas where the same judge informed and canvassed the defendant, and at a later time accepted a plea without a re-advisement of rights. *See Singletary v. State,* 88 S.D. 655, 227

N.W.2d 424 (1975) (upholding a trial court's acceptance of a guilty plea when the defendant had not been recanvassed); *Clark*, 294 N.W.2d 916 (same); *Stacey v. State*, 349 N.W.2d 439 (S.D.1984) (same). As long as the same judge is involved, the trial court may look to its entire record to verify substantial compliance with SDCL 23A–7–4 and the advisement of *Boykin* rights. *See Quist v. Leapley*, 486 N.W.2d 265 (S.D.1992). The rule is simply that "[t]he trial court must be able to determine from its own record that the accused has made a free and intelligent waiver of his constitutional rights before a guilty plea is accepted." *Id.* at 267 (citations omitted).

[¶ 37.] Judge Trimble made that determination from the record, and his specific finding was that Goodwin's plea was "given freely and voluntarily." Therefore, we should pay heed to our prior warning that "this Court, acting in our appellate function on the cold ... record before us, cannot presume greater insight into the defendant's 'understanding of his rights ... and his plea of guilty than that of the [trial court] that [has] considered this case.'" *State v. Moeller*, 511 N.W.2d 803, 808 (S.D.1994) (holding that guilty pleas previously entered by Moeller were voluntary, intelligent, and knowing) (quoting *Boyd v. Dutton*, 405 U.S. 1, 4, 92 S.Ct. 759, 761, 30 L.Ed.2d 755, 759 (1972) (White, J., dissenting)).

[¶ 38.] This Court, however, declines to follow this admonition. Moreover, in examining the circumstances of this plea, this Court only relies upon age, prior criminal history, and time between advisements in determining that the plea must have been involuntary. This analysis misapplies other important factors and the totality of all circumstances when judged by objective standards. The Court first determines that Goodwin's lack of experience with the

system and his age "mitigates against him having made a free and intelligent waiver of his rights." However, even though Goodwin was 19 at the time of the assault, "this cannot be said to adversely affect his plea since he was over the age of minority." *State v. Bolger*, 332 N.W.2d 718, 721 (S.D.1983). Furthermore, "[t]here is no indication in the record that he [was] anything other than a person of at least average intelligence and comprehension." *Gregory v. State*, 353 N.W.2d 777, 780 (S.D.1984). In fact, Goodwin claims to have been an "above-average student." This Court then relies upon the fact that Goodwin had no prior criminal record. However, he was represented by counsel at both the arraignment and the change of plea hearings, a highly significant fact to which this Court gives no apparent importance.

[¶ 39.] But probably most significantly, Goodwin changed his plea after entering into a plea agreement. Under those circumstances, we have specifically held that a defendant can hardly be heard to say that he pleaded guilty without knowing the full consequences of his plea:

> The fact that appellant pleaded guilty, pursuant to a plea bargain arrangement with the prosecuting attorney, further establishes that his guilty plea was made with full knowledge of its consequences.... *Equipped with counsel, appellant can hardly be heard to say that he pleaded guilty without knowing the full consequences thereof.*

*Clark*, 294 N.W.2d at 920 (emphasis added). The Court attempts to distinguish *Clark* by stating that unlike *Clark*, the specific terms of Goodwin's sentence were not stated. The Court is incorrect. Here, the written plea agreement, sent to Goodwin well before the change of plea, stated that "the amount of incarceration *in the penitentiary* [was] up to the Judge. The

State *will recommend the penitentiary,* but no specific time." That letter also indicated that the State would "oppose a suspended imposition of sentence ... *but could see nothing short of an eight year sentence.*" (Emphasis added.) Clearly, Goodwin could not have had any illusions about the lengthy penitentiary sentence he was facing.

[¶ 40.] Finally, contrary to the majority opinion, the amount of time between the arraignment and the guilty plea was not excessive. *See Garritsen,* 376 N.W.2d at 578 (noting that "we have upheld guilty pleas where the *same judge* informed and canvassed the defendant once, and then later accepted a guilty plea without readvising the defendant, where the time lapse was five hours ... 26 days, and ... 30 days." (internal citations omitted)).[7]

[¶ 41.] Despite our cases permitting pleas without a re-advisement of rights, the Court contends that Goodwin's plea of guilty must be deemed involuntary. However, in reviewing the Court's opinion, it must not be lost that neither Goodwin nor his trial counsel[8] testified (in support of the motion to withdraw the plea) that *factually* the plea was involuntary because Goodwin failed to understand his rights or the consequences of his plea. This, of course, he could not do because at his arraignment, Goodwin told Judge Trimble that he understood his constitutional and statutory rights, the nature of the offense, its maximum penalty, and the conse-

quences of pleading guilty.[9] Goodwin's failure to assert a factual lack of knowledge of his constitutional and statutory rights, coupled with the trial court's explicit recitation of those rights at the arraignment and its specific finding that the plea was voluntary, undercuts this Court's assertion that the record fails to indicate that Goodwin had the requisite knowledge of his rights and the consequences of a guilty plea.

[¶ 42.] Finally, the Court's reliance upon the *absence* of record evidence to support a finding of a voluntary plea is misplaced in cases like this where there is record evidence of the rights having been given. In such cases, a defendant must seek to withdraw his plea contending that he misunderstood those rights, and the *record must show* that some circumstances *reasonably justified* the defendant's *mistaken impression.*

> Where the record shows that "circumstances as they existed at the time of the guilty plea, *judged by objective standards, reasonably justified his mistaken impression,*" a defendant must be held to have entered his plea without full knowledge of the consequences and involuntarily.

*State v. Wahle,* 521 N.W.2d 134, 137 (S.D. 1994) (citing *United States v. Crusco,* 536 F.2d 21, 24–25 (3d Cir.1976)); *Thielsen,* 2004 SD 17, ¶ 22, 675 N.W.2d at 434 (re-

---

7. Although the Court cites *Garritsen* for the proposition that a 57 day delay is excessive, that case is inapposite. The *Garritsen* plea was reversed because a *different judge* presided at the plea hearing. *Id.*

8. Appellate counsel did not represent Goodwin until the motion to withdraw his plea.

9. Goodwin limited his argument at the withdrawal of plea hearing to the assertion that he was simply not guilty of aggravated assault

because his blow to the victim's head was not the blow that fractured the victim's jaw. Although there was a passing reference to SDCL 23A–7–4 (Rule 11), there was no argument that his plea was involuntary because he failed to understand his constitutional and statutory rights (the only exception being a belated assertion that he did not understand the difference between a felony and misdemeanor; an assertion that is clearly refuted by the record evidence at the arraignment).

quiring that the review of the voluntariness by judged by objective standards).

[¶ 43.] Here, the record, when judged by objective standards, does not indicate that Goodwin *misunderstood* his statutory and constitutional rights. On the contrary, the totality of the circumstances reveals that Goodwin's plea was an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences. *Hofer,* 1998 SD 58, ¶ 26, 578 N.W.2d at 588. Indeed, the judge who observed Goodwin throughout these proceedings specifically found that Goodwin's plea was "given freely and voluntarily." And, at the subsequent withdrawal of plea hearing, Judge Trimble reiterated the fact that he had fully advised Goodwin of his rights at the arraignment. Therefore, we should follow our precedent in *Singletary, Clark,* and *Stacey,* and decline to reverse a plea simply because a third advisement of rights was not given. We should certainly, from our appellate perspective, decline to divine greater insight into Goodwin's actual understanding of his rights and plea of guilty than the trial court ascertained from its personal interaction with Goodwin throughout these proceedings. *Moeller,* 511 N.W.2d at 808.

[¶ 44.] I therefore dissent.

[¶ 45.] GILBERTSON, Chief Justice, joins this dissent.