2005 SD 106

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Joseph Wayne THIN ELK, aka Joseph Wayne Ross, Defendant and Appellant.**

**No. 23513.**

Supreme Court of South Dakota.

Considered on Briefs Aug. 30, 2005.

Decided Oct. 19, 2005.

Lawrence E. Long, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, SD, for plaintiff and appellee.

Gary W. Conklin, Sioux Falls, SD, for defendant and appellant.

ZINTER, Justice.

[¶ 1.] Joseph Wayne Thin Elk, also known as Joseph Wayne Ross, was charged with first-degree murder. Thin Elk entered a guilty plea and received a sentence of life imprisonment. Thin Elk appeals, asserting that (1) his guilty plea was not intelligent and voluntary; and (2) there was an insufficient factual basis for

the trial court to accept his guilty plea. We disagree and affirm.

## Facts and Procedural History

[¶2.] On July 12, 2004, Thin Elk attended a party at the apartment of Orlando Foolbull. At the party, a fight started between Foolbull and Dondrell Buffalo. During the fight, Thin Elk approached Buffalo and shot him three times in the head, killing him. Thin Elk left the scene and was eventually apprehended in South Sioux City, Nebraska.

[¶3.] Thin Elk was indicted on one count of first-degree murder and one count of grand theft. He initially pleaded not guilty. Later, against the advice of counsel, he pleaded guilty to first-degree murder. He was sentenced to life imprisonment without parole.

## Analysis and Decision

[¶4.] Thin Elk's first contention is that his guilty plea was not intelligent and voluntary. In *Nachtigall v. Erickson*, 85 S.D. 122, 128, 178 N.W.2d 198, 201 (1970), we adopted the advisement of rights requirements of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) and, in addition, required that a defendant understand the nature and consequences of his guilty plea.[1] SDCL 23A–7–4 also contains additional requirements that must be satisfied before a court may accept a guilty plea.[2]

[¶5.] In determining whether a plea was intelligently and voluntarily made, we not only look to the foregoing requirements, but we also look to the totality of the circumstances. *State v. Lashwood*, 384 N.W.2d 319, 321 (S.D.1986) (citations omitted). We consider "the defendant's age, prior criminal record, and whether he was represented by counsel." *Weiker v. Solem*, 515 N.W.2d 827, 832 (S.D.1994) (citations omitted). Other factors include "the existence of a plea agreement" and "the time lapse between

1. We stated:

   [I]t is now settled as a principle of the constitutional law that a plea of guilty cannot stand unless the record in some manner indicates a free and intelligent waiver of the three constitutional rights mentioned in Boykin—self-incrimination, confrontation and jury trial—and an understanding of the nature and consequences of the plea.

   *Nachtigall*, 85 S.D. at 128, 178 N.W.2d at 201.

2. SDCL 23A–7–4 provides:

   Before accepting a plea of guilty or nolo contendere a court must address the defendant personally in open court, subject to the exception stated in § 23A–7–5, and inform him of, and determine that he understands, the following:

   (1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law;

   (2) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him;

   (3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself;

   (4) That if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

   (5) That if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury.

the explanation of rights at the arraignment and [when] the guilty plea [was] considered." *State v. Goodwin,* 2004 SD 75, ¶¶ 15, 17, 681 N.W.2d 847, 853–54.

[¶ 6.] A review of this record clearly reflects that the trial court ensured an intelligent and voluntary plea by first satisfying the requirements of *Boykin* and *Nachtigall.*[3] With respect to the right to a trial, the judge explained the aspects of a jury trial, informing Thin Elk that: twelve jurors would hear the case; it was the jury's responsibility to hear all of the evidence, including the State's and his witnesses; he could testify at the trial and the jury would hear his evidence; and the jury would decide whether he was guilty or not guilty of the crime. Thin Elk was warned that by entering a plea of guilty he would waive this right to a jury trial.

[¶ 7.] Thin Elk was also informed of his right to confront his accusers as well as his right to subpoena witnesses to present his side of the case. The judge continued and told Thin Elk that by pleading guilty he would be waiving these rights. In order to ensure Thin Elk understood these consequences, the judge then reiterated that if Thin Elk entered a plea of guilty there would be no jury trial, he would not have the opportunity to talk to a jury, and he would not be able to see or confront any of the State's witnesses. The judge asked Thin Elk if he understood that he was giving up these rights, and Thin Elk responded that he did.

[¶ 8.] The judge next addressed Thin Elk's right against compulsory self-incrimination. Thin Elk was informed that he had the right to remain silent, and in very simplistic terms, the judge went into detail explaining this right. The judge also advised Thin Elk that by pleading guilty he was waiving his right to remain silent "in a very, very strong way" because his plea would make him guilty of the crime. Thin Elk acknowledged that he understood that he was giving up this right by entering a guilty plea.

[¶ 9.] The judge then reviewed the foregoing rights one additional time. After reiterating that Thin Elk would be waiving his right against self-incrimination, his right to a jury trial, and his right to confront and cross-examine the State's witnesses by pleading guilty, the judge asked Thin Elk if he had any questions. Thin Elk, again, indicated that he understood and did not have any questions about the waiver of his rights.[4] This colloquy clearly satisfied the requirements of *Boykin.*

3. The court went to great lengths to impress upon Thin Elk the significance of his guilty plea. The Court stated:

You're making a very important decision today.... [B]ecause it is an important decision, I'm going to take some time today to visit with you.... And the reason I'm doing that is when you enter a guilty plea, you give up legal and constitutional rights. That it's important that you understand that you're giving up these rights.

4. **The Court:** Okay. I'm going to just very quickly summarize what I have said to you, Mr. Thin Elk. You're giving up your right to remain silent. When you say you're guilty, you're making yourself guilty with your own words. At that point the prosecutors who represent the State do not have to call witnesses, do not have to convince the jury of anything because you're admitting your guilt. Do you have any questions about that?

**The Defendant:** No.

**The Court:** Do you have any questions at all about the fact that you are giving up your right to a trial, that you're never going to get to see the State's witnesses or ask them questions, and you're never going to have an opportunity to call your own witnesses and give your side of what happened? Any questions about that?

**The Defendant:** No.

**The Court:** Any questions at all, Mr. Thin Elk, about the fact that once you plead guilty, I'll no longer look at you as being presumed

[¶ 10.] We now turn to the additional requirements of *Nachtigall* and SDCL 23A–7–4 that were not satisfied by the *Boykin* advisement. The first subsection of SDCL 23A–7–4 requires an advisement of the charge, including its mandatory minimum and possible maximum penalties. In addressing these requirements, the judge informed Thin Elk that he was charged with first-degree murder for killing Dondrell Buffalo without lawful authority and with a premeditated design. He was further informed that murder in the first-degree was a Class A Felony that was "punishable by either death or life in the State Penitentiary." However, the judge continued, stating that in this case the punishment would be life in the state penitentiary and that the court was not permitted to reduce that sentence. Thin Elk stated that he understood both the charge and his sentence.

[¶ 11.] The second subsection of SDCL 23A–7–4 requires that the court inform the defendant that he has the right to court-appointed counsel if he was not represented by an attorney. Because Thin Elk was represented by two attorneys throughout these proceedings, this requirement was satisfied.

[¶ 12.] The third subsection requires that the defendant must know and understand that he has the right to plead not guilty. It is very clear from this record that the defendant was aware of his right to plead not guilty. This is apparent from both of his attorneys' advisement to plead not guilty. Furthermore, the judge asked Thin Elk if he understood that his lawyers were advising him not to plead guilty, and Thin Elk stated that he understood.

[¶ 13.] Finally, the requirements in the fourth subsection were satisfied by the

court's *Boykin* advisement, and the fifth subsection was inapplicable as Thin Elk has not been prosecuted for perjury for anything he said in entering his plea or answering questions of the court. Thus, because the circuit court complied with *Boykin, Nachtigall,* and SDCL 23A–7–4, Thin Elk's plea was intelligent and voluntary.

[¶ 14.] Thin Elk, however, disagrees, contending that:

1. He entered a plea virtually without counsel as his two attorneys were unable to persuade him from entering a guilty plea;

2. Having just turned eighteen and committed his first adult felony, "his age and lack of exposure to the adult legal system" prevented him from making an intelligent plea;

3. He was accustomed to the juvenile corrections system, which is geared toward rehabilitation as opposed to the harsher and more punitive adult system; and

4. There was an abrupt transition from the juvenile system to the adult criminal system as there were only twelve days between his release from the juvenile system and his incarceration in the adult system; thus, he "was too young and immature to make a reasoned decision to surrender his right to a trial and other constitutional due process protections."

[¶ 15.] The totality of the circumstances does not sustain these contentions. Thin Elk was eighteen years old at the time of his guilty plea. However, his juvenile record indicates that he was more than familiar with the criminal justice system.

innocent? You're no longer presumed innocent once you plead guilty. You are guilty. All that will remain in the case is

for the sentence to be imposed. Do you understand that, sir?
**The Defendant:** Yeah.

Moreover, he was vigorously represented by two attorneys who advised him against this plea of guilty. Therefore, although Thin Elk contends that he was too immature to make a reasoned decision, we conclude that he received all the law requires. "The fundamental test is whether the plea of guilty was an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *Hofer v. Class,* 1998 SD 58, ¶ 26, 578 N.W.2d 583, 588 (citation omitted). Here, Thin Elk's age, juvenile record, and the advice of counsel, when considered in conjunction with the trial court's extensive explanation of his constitutional and statutory rights, clearly reflect that his guilty plea was an intelligent act done with knowledge of the circumstances and consequences. Therefore, despite his recent experiences in the juvenile system, Thin Elk's plea was intelligent and voluntary.

[¶ 16.] Thin Elk finally contends that because he pleaded to a life sentence with no plea bargain or other legal benefit, his plea was not intelligent and voluntary. Although there was no plea agreement, one of his attorneys explained that Thin Elk's "decision to plead guilty was not based on the strength of the State's case but on his desire to confront the awful truth of the thing he did . . . that he can't undo." As a result, while Thin Elk may not have received any legal benefit of a plea agreement, the record reflects rational thought in his decision to plead guilty; *i.e.,* the peace of mind he received in return for taking responsibility for his actions.

[¶ 17.] In sum, the record reflects that the court informed Thin Elk of his constitutional and statutory rights,[5] and Thin Elk understood that by entering a guilty plea he would waive those rights. We, therefore, find that under the totality of the circumstances, Thin Elk's subsequent plea was intelligent and voluntary.

### Factual Basis for Guilty Plea

[¶ 18.] SDCL 23A–7–2 (Rule 11(a))[6] and SDCL 23A–7–14 (Rule 11(f))[7] provide that a court may not accept a defendant's guilty plea unless there is a factual basis for the plea. "The purpose of establishing a factual basis for a plea is to 'protect a defendant who is in a position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.' " *Lashwood,* 384 N.W.2d at 321 (citations omitted).

[¶ 19.] Thin Elk contends that there was an insufficient factual basis for the trial court to find that he committed first-degree murder. Thin Elk points out that his counsel "reluctantly" made statements confirming a factual basis. He also argues that the trial court gave undue weight to his defense counsel's statements confirming a factual basis for the charge.

[¶ 20.] However, a review of the sentencing transcript does not reflect that his attorneys were reluctant to admit the exis-

---

5. Another factor considered when analyzing the totality of the circumstances is the length of time between the explanation of rights at the arraignment and when the guilty plea was considered. This factor is inapplicable in this case as the judge explained Thin Elk's rights immediately before the guilty plea was taken.

6. SDCL 23A–7–2 (Rule 11(a)) provides in pertinent part:

The court may not enter a judgment unless it is satisfied that there is a factual basis for any plea except a plea of nolo contendere.

7. SDCL 23A–7–14 (Rule 11(f)) provides:

The court shall defer acceptance of any plea except a plea of nolo contendere until it is satisfied that there is a factual basis for the offense charged or to which the defendant pleads.

tence of a factual basis. Rather, the record reflects that they were simply uncomfortable admitting that there was a factual basis at a time when Thin Elk was pleading guilty against their advice.[8] More specifically, after the attorneys were assured that Thin Elk could plead guilty against their advice and there could still be a factual basis for the plea, one defense counsel stated, "[c]ertainly there would be a sufficient factual basis I think for this plea of guilty." The other then stated, "I would agree with that, Judge. I think there is enough for the court to find a factual basis." Based on the entire record, we conclude the trial court correctly found that Thin Elk's attorneys confirmed without reluctance that there was a factual basis for his guilty plea. We also conclude that the court appropriately considered those statements.

[¶ 21.] Thin Elk, however, also asserts that the State did not establish a factual

basis that he intended to kill Buffalo because he "thought that the safety on the firearm was 'on' and that it would not discharge." However, the sentencing transcript clearly indicates that the judge advised Thin Elk of the charge, including the element of premeditation, and that Thin Elk admitted there was a factual basis for the premeditation element.[9]

[¶ 22.] The factual basis for a guilty plea does not have to come from the defendant himself but may be attained by an inquiry of the prosecution. *State v. Schulz*, 409 N.W.2d 655, 658 (S.D.1987) (citation omitted). Here, the factual basis came from the prosecution and from Thin Elk. He not only agreed with the factual basis given by the state's attorney but also corrected the trial court on one portion of the factual basis statement that he believed was incorrect. However, that one correction did not relate to the premedita-

---

8. **The Court:** Mr. Der Hagopian, from your investigation of the case, can you state that there would be a factual basis for the plea here?
   **Mr. Der Hagopian:** I would be very uncomfortable doing that since he's pleading guilty against my advice.

9. **The Court:** Mr. Thin Elk, the charge against you is Murder in the First Degree. The State of South Dakota is charging you as follows: That on or about the 12th of July, 2004, here in Minnehaha County, South Dakota, that you, the defendant, Joseph Thin Elk, also known as Joseph Ross, did commit the crime of Murder in the First Degree, that without authority of law and with a premeditated design to effect his death, did kill Dondrell M. Buffalo, a human being, in violation of statute. Do you have any questions about what those words mean, that you're charged with Murder in the First Degree?
   **The Defendant:** No.
   . . .
   **State's Attorney:** [O]n the 12th day of July, 2004, this defendant was attending a house party at the residence of Orlando Foolbull

with several other people, including a couple of co-defendants in this case. After being at the house party for some time at 2400 West 9th Street, Apartment Number 203, in Sioux Falls, Minnehaha County, Dondrell Buffalo arrived at the party....[A] fight broke out between Mr. Buffalo and the co-defendant Foolbull in the apartment. This was actually Mr. Foolbull's apartment. The fight spilled out into the hallway, where Mr. Buffalo and the co-defendant Foolbull fought in the hallway. The defendant Thin Elk approached the participants in this fight with a small caliber handgun that he had received from co-defendant West earlier in the night, and he basically went up to Mr. Buffalo with this handgun and shot him three times in the head and killed him, and fled the scene, concealed the evidence and left the state.
   . . .
   **The Court:** Mr. Thin Elk, is that basically what happened?
   **The Defendant:** Basically, except for the part to who gave me the gun.
   **The Court:** Okay. But the part about you using the weapon, is that accurate?
   **The Defendant:** Yes.

tion element he now challenges on appeal. Therefore, based upon the entire record, the trial court did not err in determining that there was a sufficient factual basis to accept Thin Elk's guilty plea.

[¶ 23.] Affirmed.

[¶ 24.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.